ABDUR-RA'OOF v DEPARTMENT OF CORRECTIONS

Docket No. 161428. Submitted January 17, 1995, at Lansing. Decided February 7, 1995, at 9:20 A.M.

Cleophus Khalid Abdur-Ra'oof and Abdul-Jalil Danfodio, prison inmates and members of the Islamic faith, brought an action in the Ingham Circuit Court against the Department of Corrections, alleging that the defendant's implementation of a policy directive that prevented the plaintiffs from attending certain religious services violated their rights under the Free Exercise Clause of the First Amendment of the United States Constitution. The directive provided that because the working day in institutions is intended to approximate that of the world outside prison, released time from work assignments for personal interest activities, including religious services, would not be permitted. The trial court, James R. Giddings, J., granted the plaintiffs' motion for summary disposition, finding that the policy directive, as implemented, was arbitrary and irrational. The court ordered the defendant not to enforce the directive in such a way as to prevent attendance at the services. The defendant appealed.

The Court of Appeals *held:*

1. The policy directive, as implemented, is neither arbitrary nor irrational and does not violate the plaintiffs' constitutional rights.

2. In balancing the constitutional rights of prisoners against the legitimate objectives of incarceration, deference is to be given to the considered judgment of the prison administrators. Prison regulations alleged to infringe on constitutional rights are judged under a reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights. When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. The ques-

REFERENCES

Am Jur 2d, Penal and Correctional Institutions §§ 27, 41, 43, 121.

Supreme Court's views as to prisoner's right to free exercise of religion under Federal Constitution's First Amendment. 96 L Ed 2d 736.

tion is whether the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational.

3. The Department of Corrections' officials could reasonably determine that to permit inmates to leave their assignments for medical or dental care, psychiatric or substance abuse counseling, and prisoner representation activities would pose neither a security risk nor a threat of disruption and would not interfere with the attempt to simulate actual working conditions, while to allow release to attend religious services or for other personal reasons might indeed have such potential.

Reversed.

1. PRISONS AND PRISONERS — CONSTITUTIONAL LAW.
   Deference is to be given to the considered judgment of prison administrators in balancing the constitutional rights of prisoners against the legitimate objectives of incarceration.

2. PRISONS AND PRISONERS — CONSTITUTIONAL LAW — PRISON REGULATIONS.
   Prison regulations alleged to infringe on constitutional rights are judged under a reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights; a regulation is valid if it is reasonably related to legitimate penological interests; the question is whether the logical connection between a regulation and the asserted goal is so remote as to render the policy arbitrary or irrational.

Cleophus Khalid Abdur-Ra'oof and Abdul-Jalil Danfodio, in propria persona.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Allan J. Soros,* Assistant Attorney General, for the defendant.

Before: CAVANAGH, P.J., and FITZGERALD and MARKEY, JJ.

PER CURIAM. Defendant Department of Corrections (DOC) appeals as of right from an order of the circuit court prohibiting it from implementing a policy directive in such a way as to prevent plain-

tiff prisoners from attending certain religious services. We reverse.

The following facts are taken from the parties' stipulated facts.

Plaintiffs are Muslims. The Islamic faith is a religion recognized by the DOC. In 1983, Muslim prisoners were authorized to attend Friday afternoon Juma'ah prayer services and two congregational services, Eid-al-Fitrah and Eid-al-Adha, subject to certain conditions. In 1987, that authorization was effectively rescinded by the implementation of Policy Directive PD-BCF-64.01, which provides in part as follows:

> Beyond the State observed holidays, institutions shall not make provisions for the observance of religious holydays [sic]. Since the working day in institutions is intended to approximate that of the world of work outside prison, released time from work assignments for personal interest activities, including religious services or other activities, will not be permitted.

The circuit court found that the policy directive, as implemented, was arbitrary and irrational and ordered the DOC not to enforce it in such a way as to prevent attendance at the above services. This Court stayed the circuit court's order pending the outcome of this appeal.

The issue on appeal is whether the policy directive impermissibly infringed on plaintiffs' constitutional rights under the Free Exercise Clause of the First Amendment of the United States Constitution.

The leading case in this context is *O'Lone v Estate of Shabazz,* 482 US 342; 107 S Ct 2400; 96 L Ed 2d 282 (1987), where the United States Supreme Court held that prison regulations that

prevented Muslim inmates from attending Juma'ah services did not violate the inmates' right to the free exercise of religion. The inmates concerned were low-security prisoners who were assigned to outside work details. Because permitting the inmates to attend Juma'ah services proved to be burdensome and posed something of a security risk, prison officials issued a policy memorandum that prohibited inmates assigned to outside work details from returning to the prison during the day except for emergency reasons.

The Supreme Court balanced the constitutional rights of prisoners against the legitimate objectives of incarceration, noted that deference is to be given to the considered judgment of the prison administrators who are charged with and trained in the running of penal institutions, and concluded that "prison regulations alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Id.* at 349. The Court held that " 'when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.' " *Id.,* quoting *Turner v Safley,* 482 US 78, 89; 107 S Ct 2254; 96 L Ed 2d 64 (1987).

The circuit court distinguished the present case from *O'Lone.* It concluded that the DOC's refusal to permit attendance at religious services was arbitrary because, unlike the prisoners in *O'Lone,* the inmates, who were not assigned to outside work details, were allowed to leave their work assignments for certain nonemergency reasons.

We believe that this distinction is insignificant. Under *O'Lone* and *Turner* the question is whether the logical connection between the regulation and the asserted goal is so remote as to render the

policy arbitrary or irrational. *O'Lone, supra* at 351; *Turner, supra* at 89-90.

In this case, DOC officials could reasonably determine that to permit inmates to leave their assignments for medical or dental care, psychiatric or substance abuse counseling, or prisoner representation activities would pose neither a security risk nor a threat of disruption and would not interfere with the attempt to simulate actual working conditions, while to allow release to attend religious services or for other personal reasons might indeed have such potential.

We conclude that the policy directive, as implemented, is neither arbitrary nor irrational and it does not violate plaintiffs' constitutional rights.

Reversed.