BLANK v DEPARTMENT OF CORRECTIONS

MILLER v DEPARTMENT OF CORRECTIONS

Docket Nos. 188881, 190011. Submitted December 18, 1996, at Lansing. Decided March 21, 1997, at 9:10 A.M. Leave to appeal sought.

Arthur R. Blank and other state prison inmates petitioned the Jackson Circuit Court for a writ of mandamus to compel the Department of Corrections and others not to implement the prisoner visitation policies outlined in a department memorandum, claiming that the policies should have been implemented as administrative rules in compliance with the Administrative Procedures Act (APA), MCL 24.201 *et seq.*; MSA 3.560(101) *et seq.* After the policies were promulgated as rules, 1995 AACS, R 791.5505, R 791.6607 *et seq.*, the petitioners sought to block the enforcement of the rules, contending that the rules were invalid because they were not approved by the Joint Committee on Administrative Rules (JCAR) of the Legislature, as required by § 45 of the APA, MCL 24.245; MSA 3.560(145), and were transmitted to the Secretary of State without a certificate of JCAR or legislative approval, as required by § 46 of the APA, MCL 24.246; MSA 3.560(146). The court, Charles A. Nelson, J., denied the request for a writ of mandamus, agreeing with the respondents that the rules are valid and enforceable and compliance with §§ 45 and 46 was not necessary because §§ 45 and 46 are unconstitutional. The petitioners appealed.

Walter Miller, a state prison inmate, brought an action in the Ingham Circuit Court against the Department of Corrections and others, seeking to enjoin the enforcement of the policies set forth in the same department memorandum, claiming that the policies should have been promulgated as rules in full compliance with the APA. The court, William E. Collette, J., dismissed the complaint, ruling that the plaintiff was not entitled to injunctive relief because the plaintiff failed to demonstrate a threat of irreparable harm. The plaintiff appealed.

The Court of Appeals consolidated the appeals.

The Court of Appeals *held*:

1. Section 45 of the APA, in providing for legislative approval of administrative rules by less than the full Legislature, violates the enactment and presentment rules of Const 1963, art 4 and is inva-

lid. As a result of the invalidation of § 45, the requirement in § 46 that a certificate of legislative approval accompany the transmittal of a promulgated administrative rule to the Secretary of State is rendered a nullity. Under Article 4, the legislative power of the state is vested in the Senate and the House of Representatives, all legislation shall be by bill and may originate in either house, and every bill passed by the Legislature shall be presented to the Governor before it becomes law. By giving the JCAR the authority to veto administrative rules proposed by an executive agency, the Legislature has delegated legislative power to a smaller legislative body that can effectively negate a valid action of an agency without following the restrictions of Article 4.

2. Section 45 violates the doctrine of separation of powers because there is no provision in § 45 for presentment to the Governor for approval of the Legislature's veto of a rule, such legislative power in rule-making goes essentially unchecked, and unchecked power is precisely what is sought to be avoided under the doctrine of separation of powers.

3. The entire APA need not be invalidated along with §§ 45 and 46 because these sections are severable from the rest of the APA. The valid object of the APA of providing procedural protection where a personal right, duty, or privilege is at stake, can still be achieved without the legislative approval requirements of §§ 45 and 46. The Legislature, acting as a whole, may still revoke or suspend a rule by passing a bill and presenting the bill to the Governor, and the JCAR is empowered by Const 1963, art 4, § 37 to suspend administrative rules between legislative sessions to preserve the Legislature's authority to revoke the rules in the next regular legislative session.

4. MCL 791.206; MSA 28.2276, the enabling statute that gives the director of the Department of Corrections rule-making authority, is not so broad that it constitutes an unconstitutional delegation of power. Given the size of the state penal system and the myriad situations that may arise therein, the enabling statute is as reasonably precise as the subject matter permits in authorizing the director to promulgate rules for the control and management of state penal institutions as the director considers necessary and expedient.

5. The director of the Department of Corrections will not be empowered with too much discretion in the wake of the invalidation of § 45 of the APA. The Legislature recently amended MCL 791.206; MSA 28.2276 to provide that the department shall not promulgate rules if the Supreme Court rules §§ 45 and 46 of the APA unconstitutional and a statute requiring legislative review is not enacted within ninety days after such ruling.

6. The prisoner visitation rules provided in the department memorandum and in 1995 AACS, R 791.6607 *et seq.* are within the subject matter of MCL 791.206; MSA 28.2276, comply with the legislative intent underlying the statute, and are not arbitrary or capricious. To the extent the visitation rules are claimed to violate the constitutional right of association, visitation with a prisoner by friend or family is not part of the right to associate. Nothing in the rules infringes on a prisoner's constitutional rights to counsel and free exercise of religion. The claim that restitution as a sanction for misconduct, as provided in the challenged rules, violates due process is without merit in view of the fact that the imposition of such sanction is discretionary. The rest of the constitutional challenges to the rules are conclusory and without support or are without merit.

Affirmed.

1. ADMINISTRATIVE LAW — ADMINISTRATIVE PROCEDURES ACT — RULES — APPROVAL BY JOINT COMMITTEE ON ADMINISTRATIVE RULES — CONSTITUTIONAL LAW — ENACTMENT AND PRESENTMENT REQUIREMENTS.

Requirements in the Administrative Procedures Act for approval by the Joint Committee on Administrative Rules of the Legislature of proposed administrative rules of executive agencies are invalid because they violate constitutional requirements that the Legislature, in exercising legislative power, must act as a whole by passing a bill and presenting the bill to the Governor (Const 1963, art 4, §§ 1, 22, 26, 33; MCL 24.245, 24.246; MSA 3.560[145], 3.560[146]).

2. PRISONS AND PRISONERS — DIRECTOR OF DEPARTMENT OF CORRECTIONS — RULE-MAKING AUTHORITY — CONSTITUTIONAL LAW — DELEGATION OF POWERS.

The statute that grants the director of the Department of Corrections authority to promulgate rules for the control and management of state penal institutions as the director considers necessary and expedient is as reasonably precise as the subject permits and is therefore not so broad that it constitutes an unconstitutional delegation of power (MCL 791.206; MSA 28.2276).

3. PRISONS AND PRISONERS — DEPARTMENT OF CORRECTIONS — VISITATION RULES.

Department of Corrections administrative rules that establish for all state penal institutions uniform visitation hours and quotas (with exceptions for clergy and attorneys), institute approved visitor lists consisting of prisoners' immediate family and ten other persons, grant the department director discretion to restrict visitation as a sanction for specified prisoner misconduct, set forth circumstances under which a visitor may be restricted from visiting a prisoner and under which visits may be limited to noncontact visitation, and pro-

vide for sanctions, including restitution for misconduct, do not exceed the scope of statutory rule-making authority or violate constitutional rights of association, counsel, free exercise of religion, or due process (1995 AACS, R 791.505, R 791.6607 *et seq.*; MCL 791.206; MSA 28.2276).

Prison Legal Services of Michigan, Inc. (by *Sandra Girard*), for Arthur R. Blank and others.

Walter Miller, in propria persona.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Thomas C. Nelson* and *George N. Stevenson*, Assistant Attorneys General, for the Department of Corrections.

Amici Curiae:

*Fraser Trebilcock Davis & Foster, P.C.* (by *David E. S. Marvin* and *Michael S. Ashton*), for the Joint Committee on Administrative Rules and others.

Before: MCDONALD, P.J., and MURPHY and M. F. SAPALA*, JJ.

MURPHY, J.

### INTRODUCTION

In these cases, we are called on to decide the constitutionality of a current statutory scheme that essentially requires that administrative rules established by the Michigan Department of Corrections (DOC) and other state administrative agencies be submitted to a joint committee of the Legislature for approval before becoming effective. We hold that the existing procedure, which effectively empowers the Legislature's

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

Joint Committee on Administrative Rules (JCAR) to veto administrative rules, fails to satisfy the enactment and presentment provisions of the Michigan Constitution, which require that laws be initiated by bill, enacted by the Legislature as a whole body, and presented to the Governor for approval.

Petitioners in Docket No. 188881 appeal as of right the trial court's order that denied their writ for mandamus to block enforcement of visitation rules promulgated by the DOC. Plaintiff in Docket No. 190011 appeals as of right the trial court's grant of summary disposition in favor of defendant in an action seeking to enjoin enforcement of departmentwide visitation rules. We affirm both cases.[1]

### PROCEDURAL HISTORY BEHIND THE DOC's ADOPTION OF THE RULES AT ISSUE

Before March 1995, R 791.6607 allowed each correctional institution to establish its own "reasonable visiting hours." In March 1995, the DOC's deputy director issued a memorandum outlining a new, standardized visitation policy to be uniformly applied throughout the department. Subsequently, the DOC began promulgating a new visitation policy in the form of administrative rules in accordance with the Administrative Procedures Act (APA), MCL 24.201 *et seq.*; MSA 3.560(101) *et seq.*, and held public hearings regarding the proposed rules as required by the APA.

The DOC then submitted its proposed rules to the JCAR, which is a committee made up of five members of the House of Representatives and five members of the Senate, MCL 24.235; MSA 3.560(135), in accor-

---

[1] We have also read and considered the amicus brief submitted by the JCAR, which raises arguments similar to those of petitioners.

dance with MCL 24.245; MSA 3.560(145) (hereinafter referred to as § 45 of the APA). The JCAR held public hearings regarding the proposed rules, but failed to approve them. Subsequently, the JCAR scheduled another hearing regarding the proposed rules. However, before that second hearing, the DOC withdrew the rules from the JCAR's consideration. At the same time, the DOC's director adopted the rules and forwarded them to the Governor and respondent Office of Regulatory Reform.

The rules were promulgated on August 10, 1995, when the Office of Regulatory Reform transmitted the rules to the Secretary of State as required by the APA. MCL 24.246(1); MSA 3.560(146)(1). However, the rules were not accompanied by a certificate of legislative or JCAR approval, which is also required by the APA. *Id.* On August 25, 1995, the rules became effective.

1995 AACS, R 791.6607 establishes department-wide, uniform visitation hours and quotas, but made exceptions for non-family member attorneys and clergy. R 791.6609 institutes the adoption of approved visitor lists consisting of the prisoner's immediate family members and ten other persons, and also gave the director of the DOC discretion to restrict visitation as a sanction for specified instances of prisoner misconduct. R 791.6611 sets forth circumstances under which a particular visitor may be restricted from visiting a prisoner. R 791.6614 sets forth circumstances under which visits may be limited to noncontact visitation. R 791.5505 provides for sanctions, including restitution, for major and minor misconduct.

PROCEDURAL HISTORY OF THE CASES AT BAR

DOCKET NO. 188881

Petitioners filed a petition seeking a writ of mandamus to block implementation of the March 1995 memorandum and compel respondents to comply with the rule-promulgation requirements of the APA. A show cause hearing was held on August 11, 1995. At that hearing, respondents introduced a copy of the rules adopted and promulgated on August 10, 1995. The trial court ruled that the memorandum was a valid exercise of discretion under the August 10, 1995, rules and denied petitioners' request for a writ of mandamus.

Subsequently, petitioners filed a complaint for a writ of mandamus and a temporary restraining order to block enforcement of the August 10, 1995, rules. Petitioners' main, but not only, contention was that the rules were invalid because they did not comply with §§ 45 and 46 of the APA. Respondents argued that §§ 45 and 46 were unconstitutional and that the rules therefore did not need to meet their requirements. The trial court agreed with respondents and denied petitioner's request for mandamus.

DOCKET NO. 190011

In April 1995, plaintiff also brought suit against the DOC seeking to enjoin it from enforcing the visitation policy established by defendant's March 1995 memorandum. The trial court ruled that plaintiff had failed to carry his burden of demonstrating a threat of irreparable harm, and it denied his motion for a temporary restraining order. The trial court also dismissed plaintiff's complaint.

These cases were consolidated by this Court on March 27, 1996.

DISCUSSION

DOCKET NO. 188881

I

First, petitioners claim that the trial court erred in ruling that §§ 45 and 46 of the APA were unconstitutional. We disagree. The constitutionality of a statute is a question of law that this Court reviews de novo. *Gilson v Dep't of Treasury*, 215 Mich App 43, 49; 544 NW2d 673 (1996).

Generally, the failure of an administrative agency to follow the approval process of the APA renders the rule void. *Goins v Greenfield Jeep Eagle, Inc*, 449 Mich 1, 9; 534 NW2d 467 (1995). Agencies comply with the mandates of the APA by utilizing the following process: (1) giving public notice of the proposed rules, (2) holding public hearings, and (3) submitting the proposed rule to the JCAR. *AFSCME v Dep't of Mental Health*, 452 Mich 1, 10, n 8; 550 NW2d 190 (1996). After an agency submits a rule to the JCAR, § 45 of the APA applies. Section 45 provides, in pertinent part:

> (8) If the committee approves the proposed rule within the time period provided by subsection (6), the committee shall attach a certificate of its approval to all copies of the rule bearing certificates except 1 and transmit those copies to the agency.
>
> (9) If, within the time period provided by subsection (6), the committee disapproves the proposed rule or the committee chairperson certifies an impasse after votes for approval and disapproval have failed to receive concurrent majorities, the committee shall immediately report that fact to the legislature and return the rule to the agency. The

agency shall not adopt or promulgate the rule unless 1 of the following occurs:

(a) The legislature adopts a concurrent resolution approving the rule within 60 days after the committee report has been received by, and read into the respective journal of, each house.

(b) The committee subsequently approves the rule.

(10) If the time permitted by this section expires and the committee has not taken action under either subsection (8) or (9), then the committee shall return the proposed rules to the agency. The chairperson and alternate chairperson shall cause concurrent resolutions approving the rule to be introduced in both houses of the legislature simultaneously. Each house of the legislature shall place the concurrent resolution directly on its calendar. The agency shall not adopt or promulgate the rule unless 1 of the following occurs:

(a) The legislature adopts a concurrent resolution approving the rule within 60 days after introduction by record roll call vote. The adoption of the concurrent resolution requires a majority of the members elected to and serving in each house of the legislature.

(b) The agency resubmits the proposed rule to the committee and the committee approves the rule within the time permitted by this section.

In 1977, our Supreme Court was asked to render an advisory opinion on the constitutionality of the above process. *Request for Advisory Opinion on Constitutionality of 1977 PA 108*, 402 Mich 83, 86-87; 260 NW2d 436 (1977). The Court declined to address the issue. Today we address the issue and align ourselves with the position taken by a majority of our sister states that mandating the type of legislative approval process for agency rules set forth in § 45 of the APA is unconstitutional.[2]

---

[2] In addition to the cases detailed in the body of the opinion, see *Gilliam Co v Dep't of Environmental Quality*, 316 Or 99; 849 P2d 500 (1993),

For example, in *State v ALIVE Voluntary*, 606 P2d 769 (Alas, 1980), the issue was the validity of a statute that allowed the legislature to annul an agency regulation by concurrent resolution. The Alaska Supreme Court struck down the statute as violating the state constitution's enactment provisions. The court held that the legislature may act by resolution in an advisory capacity, but that "when it means to take action having a binding effect on those outside the legislature it may do so only by following the enactment procedures." *Id.* at 773. The court went on to state that while "the power to void agency regulations could be exercised by either the legislature, or by an agency, when the legislature exercises such power it must do so while acting as a legislature. It may not grant itself power to act as an agency." *Id.* at 778.

In *Opinion of the Justices*, 121 NH 552; 431 A2d 783 (1981), the issue was the validity of a procedure that empowered standing committees of both houses of the legislature to review and reject rules proposed by state agencies. The justices concluded that because the agencies' rule-making authority derives solely from power that the legislature delegates to them, the legislature may properly condition the exercise of that delegated authority upon legislative approval. *Id.* at 559. However, the justices opined that the legislature must act in accordance with the constitutional limitations placed upon it, i.e., action by a

---

rev'd on other grounds sub nom *Oregon Waste Systems v Dep't of Environmental Quality*, 511 US 93; 114 S Ct 1345; 128 L Ed 2d 13 (1994); *State ex rel Stephan v Kansas House of Representatives*, 236 Kan 45; 687 P2d 622 (1984); *General Assembly of the State of New Jersey v Byrne*, 90 NJ 376; 448 A2d 438 (1982); *State ex rel McLeod v McInnis*, 278 SC 307; 295 SE2d 633 (1982). In the minority, see *Mead v Arnell*, 117 Idaho 660; 791 P2d 410 (1990).

quorum of both houses. *Id.* at 559-560. The justices went on to state that, although "the legislature may delegate a portion of the legislative authority to an administrative agency which is not subject to this requirement, it may not delegate its lawmaking authority to a smaller legislative body and thereby evade the requirement for action by a majority of a quorum of both legislative bodies." *Id.* at 560.

In *State ex rel Barker v Manchin*, 167 W Va 155; 279 SE2d 622 (1981), the West Virginia Supreme Court was confronted with a statute that conditioned the effectiveness of agency rules on the approval of a joint committee of both houses of the legislature. The court held that while "the Legislature has the power to void or to amend administrative rules and regulations, when it exercises that power it must act as a legislature through its collective wisdom and will, within the confines of the enactment procedures mandated by our constitution. It cannot invest itself with the power to act as an administrative agency in order to avoid those requirements." *Id.* at 173. The court went on to state that some procedure for review of agency rules may be warranted, but that any legislative review must be done "within the limits of the separation of powers doctrine and according to the system of checks and balances in our governmental framework." *Id.* at 176.

The United States Supreme Court has also expressed its opinion regarding the constitutionality of legislative vetoes in the federal context. In *Immigration & Naturalization Service v Chadha*, 462 US 919; 103 S Ct 2764; 77 L Ed 2d 317 (1983), the Court considered the constitutionality of a provision in a federal statute that gave the Attorney General author-

ity to suspend a deportation and allowed one House of Congress, by resolution, to invalidate the Attorney General's decision. The Court held that the legislative veto provision was unconstitutional, violating the Presentment and Bicameralism Clauses of the constitution. The Court stated:

> Disagreement with the Attorney General's decision on Chadha's deportation . . . no less than Congress' original choice to delegate to the Attorney General the authority to make that decision, involves determinations of policy that Congress can implement in only one way; bicameral passage followed by presentment to the President. Congress must abide by its delegation of authority until that delegation is legislatively altered or revoked. [*Id.* at 954-955.]

In Michigan, it is undisputed that the Legislature may delegate authority to administrative agencies to make rules and exercise discretion. *Argo Oil Corp v Atwood*, 274 Mich 47, 52; 264 NW 285 (1935). However, § 45 of the APA attempts to take back some of that authority and condition its exercise on the approval of the Legislature. We agree with the previously cited authority that such a procedure is unconstitutional. Once the Legislature has, by law, delegated rule-making authority to an agency, it must abide by that delegation and not interfere with that authority until altered or revoked by law. *Chadha*, *supra* at 955.

In Michigan, Const 1963, art 4, § 1 provides that "[t]he legislative power of the State of Michigan is vested in a senate and a house of representatives." Const 1963, art 4, § 22 provides that "[a]ll legislation shall be by bill and may originate in either house." According to Const 1963, art 4, § 26, "[n]o bill shall become a law without the concurrence of a majority

of the members elected to and serving in each house." Then, pursuant to Const 1963, art 4, § 33, "[e]very bill passed by the legislature shall be presented to the governor before it becomes a law." Because the procedures in § 45 do not mirror the requirements of article 4 of our constitution, the Legislature is interfering with the delegated authority by something short of a "law." By giving the JCAR the authority to veto administrative rules proposed by an executive agency, the Legislature has delegated legislative power to a smaller legislative body that can effectively negate a valid action of an agency without following the restrictions of article 4 of our constitution. Although administrative rules have the force and effect of law, when an agency makes rules, it is not "legislating," and therefore not bound by the requirements of article 4, because it must act pursuant to and within the confines of the legislative delegation of power. See *Westervelt v National Resources Comm*, 402 Mich 412, 440-441; 263 NW2d 564 (1978) (Williams, J.). However, when the JCAR acts, it has the power to speak on the subject at issue without any specified limitations and, in accordance with its own will, it is essentially "legislating" without the confines of article 4. *Id.* The Legislature may not do indirectly what it cannot do directly. *Brennan v Recorder of the City of Detroit*, 207 Mich 35, 39; 173 NW 511 (1919). Even when the Legislature acts by concurrent resolution, it is not making "law." Such resolutions are not "bills" and are not presented to the Governor for approval as required by article 4 of our constitution. See *Becker v Detroit Savings Bank*, 269 Mich 432, 434-436; 257 NW 853 (1934). Therefore, because § 45 of the APA violates article 4 of our constitution, it is

invalid. As a result of this holding, the requirement in § 46 of the APA that an agency may not file a rule with the Secretary of State without a certificate of legislative approval is rendered a nullity.

In a broader sense, by concluding that § 45 of the APA violates the enactment and presentment requirements of the constitution, we are concluding that § 45 violates the doctrine of separation of powers. Enactment and presentment clauses "are integral parts of the constitutional design for the separation of powers." *Chadha, supra* at 946. As Thomas Jefferson explained: " '[T]he powers of government should be so divided and balanced among several bodies . . . that no one could transcend their legal limits, without being effectually checked and restrained by the others.' " *General Assembly of the State of New Jersey v Byrne*, 90 NJ 376, 381; 448 A2d 438 (1982), quoting Thomas Jefferson, *Notes on the State of Virginia*, 120 (W Peden ed, 1955). Because there is no provision in § 45 of the APA for presentment to the executive for approval of the Legislature's veto of a rule, such legislative power in regard to rule-making goes essentially unchecked, and unchecked power is precisely what the separation of powers doctrine sought to avoid.

Petitioners argue that because agency rule-making power is derived solely from a legislative delegation, conditioning the exercise of that delegated authority on legislative approval is proper. We agree. However, as just indicated, the current procedure in §§ 45 and 46 of the APA is improper. Any procedure must comport with the requirements of article 4 of our constitution.

There is currently a "legislative disapproval" process in place in MCL 24.251; MSA 3.560(151). Under

that statute, if the JCAR, an appropriate standing committee, or a member of the Legislature believes a promulgated rule "is unauthorized, is not within the legislative intent or is inexpedient, the committee or member may do either or both of the following:"

> (a) Introduce a concurrent resolution at a regular or special session of the legislature expressing the determination of the legislature that the rule should be amended or rescinded. Adoption of the concurrent resolution constitutes legislative disapproval of the rule, but rejection of the resolution does not constitute legislative approval of the rule.
>
> (b) Introduce a bill at a regular session, or special session if included in a governor's message, which in effect amends or rescinds the rule. [MCL 24.251; MSA 3.560(151).]

If avenue a is chosen and the Legislature adopts the concurrent resolution expressing its disapproval, the Legislature is in essence making a recommendation to the administrative agency to withdraw or amend the rule. See OAG, 1967-1968, No 4586, pp 70-73 (July 13, 1967). However, as previously discussed, because a concurrent resolution does not have the force and effect of law, such a legislative disapproval would have no legal effect on the rule, but would simply be a plea to the agency to take action on its own accord. If the JCAR or the member of the Legislature seeks to legally affect a rule during a session of the Legislature, it must act pursuant to avenue b.

The power of the Legislature to act is also preserved between sessions of the Legislature by Const 1963, art 4, § 37, which provides:

> The legislature may by concurrent resolution empower a joint committee of the legislature, acting between sessions, to suspend any rule or regulation promulgated by an admin-

istrative agency subsequent to the adjournment of the last preceding regular legislative session. Such suspension shall continue no longer than the end of the next regular legislative session.

The intent behind this provision is apparent from the record of the constitutional convention:

[W]hen any administrative agency promulgates a rule when the legislature is not in session, this committee is merely allowed to suspend it until the legislature comes back into session. It does not allow this joint committee to kill the rule or anything like that, or to alter it, but merely to suspend it. We found that too many times, these administrative agencies have adopted rules when the legislature was not in session. [2 Official Record, Constitutional Convention 1961, p 2420.]

We note that art 4, § 37 of the constitution was included in response to OAG, 1958, No 3352, pp 246, 253 (October 8, 1958), where the Attorney General opined that administrative rules cannot be constitutionally suspended or abrogated by the Legislature without passage of a bill that becomes a law. By placing this section in the constitution, the framers were giving the JCAR the constitutional authority to act between sessions of the Legislature to suspend administrative rules until the Legislature returns to consider them. The framers were trying to prohibit agencies from being able to promulgate rules between sessions of the Legislature to avoid the possibility of legislative action. This history shows that the framers of the constitution were operating under the assumption that the Legislature only had the constitutional authority to affect agency rules by bills that become law through the article 4 process and that they sought

to preserve that authority, through the JCAR suspension, between sessions. This also lends further support to our conclusion that the legislative approval process of §§ 45 and 46 of the APA is unconstitutional.

As indicated, § 45 of the APA is unconstitutional and § 46 has been rendered a nullity. Petitioners argue that neither section is severable from the APA and that such a holding therefore renders the entire APA a nullity. We disagree.

MCL 8.5; MSA 2.216 provides in part:

> If any portion of an act or the application thereof to any person or circumstances shall be found to be invalid by a court, such invalidity shall not affect the remaining portions or applications of the act which can be given effect without the invalid portion or application, provided such remaining portions are not determined by the court to be inoperable, and to this end acts are declared to be severable.

This Court has interpreted this provision to mean:

> When a portion of an act is invalid in all possible applications, the invalid portion may be deleted and the court may determine by the rules of legislative intent whether the valid portion of the act shall be enforced. The law enforced after severance must be reasonable in light of the act as originally drafted. Independence of the valid from the invalid parts of an act does not depend on their being located in separate sections. When the valid object of the act can be achieved without the invalid part, the act will be upheld. [*Michigan State AFL-CIO v Employment Relations Comm*, 212 Mich App 472, 501; 538 NW2d 433 (1995), vacated in part on other grounds 453 Mich 362; 551 NW2d 165 (1996).]

Therefore, the APA must be analyzed to determine whether the legislative intent behind the act will allow §§ 45 and 46 to be severed.

The intent behind the APA is to "provide procedural protection where a personal right, duty or privilege is at stake." *Midland Twp v State Boundary Comm*, 401 Mich 641, 671; 259 NW2d 326 (1977). In an attempt to offer this protection, the Legislature provided that administrative agencies must afford the public notice and an opportunity to be heard before adopting a new rule. MCL 24.241(1); MSA 3.560(141)(1). If the agency fails to substantially comply with these provisions, the rule is rendered invalid. MCL 24.243(1); MSA 3.560(143)(1). Severing the legislative approval requirements of §§ 45 and 46 from the APA would in no way affect these protections. Even if we were to assume that giving the Legislature the opportunity to veto the rule was a necessary element of the procedural protection intended by the APA, severance does not take away that opportunity. The Legislature may still revoke or suspend a rule through the use of a bill passed by a majority of both houses and presented to the Governor, and the JCAR may act to suspend rules between sessions to preserve the Legislature's authority to take action. Because the valid object of the APA can be achieved without the legislative approval requirements of §§ 45 and 46, those sections may be severed and the remaining portion of the APA shall be enforced.

II

Next, petitioners claim that the enabling statute giving the director of the DOC rule-making authority, MCL 791.206; MSA 28.2276, is so broad that it amounts to an unconstitutional delegation of power. We disagree.

The issue we must address in this regard is " 'whether the limits [on the exercise of discretion

conferred on the administrative official] are suffi-
ciently defined to avoid delegation of legislative pow-
ers.' " *Dep't of Natural Resources v Seaman*, 396 Mich
299, 308; 240 NW2d 206 (1976), quoting *Argo Oil Corp
v Atwood*, 274 Mich 47, 52; 264 NW 285 (1935).

"While no hard and fast rule exists for determining
whether a given statute has provided sufficient stan-
dards, a number of guiding principles have evolved in
Michigan jurisprudence to assist in making a determi-
nation." *Seaman, supra* at 309. Among these princi-
ples are:

(1) The act in question must be read as a whole;
the provision in question should not be isolated but
must be construed with reference to the entire act.
*Id.*, citing *Argo Oil, supra* at 53.

(2) If possible, the statute must be construed in
such a way as to " 'render it valid, not invalid' " and as
vesting " 'discretionary, not arbitrary authority.' " *Sea-
man, supra* at 309, quoting *Argo Oil, supra* at 53.

(3) The standard should be " 'as reasonably precise
as the subject matter requires or permits.' " *Seaman,
supra* at 309, quoting *Osius v St Clair Shores*, 344
Mich 693, 698; 75 NW2d 25 (1956).

The key to the test is the fact that the standard in
question can be made in " 'quite general language, so
long as the exact policy is clearly made apparent, and
the administrative board may carry out in its action
the policy declared and delegated.' " *West Ottawa
Public Schools v Director, Dep't of Labor*, 107 Mich
App 237, 243; 309 NW2d 220 (1981), quoting *G F Red-
mond & Co v Securities Comm*, 222 Mich 1, 5; 192
NW 688 (1923).

It is with these principles in mind that we turn to MCL 791.206; MSA 28.2276, which, at the time the rules were promulgated, provided, in part:

> (1) The director may promulgate rules pursuant to the [APA], which may provide:
>
> (a) For the control, management, and operation of the general affairs of the department.
>
>       \*     \*     \*
>
> (d) For the management and control of state penal institutions, correctional farms, probation recovery camps, and programs for the care and supervision of youthful trainees separate and apart from persons convicted of crimes within the jurisdiction of the department. . . .
>
>       \*     \*     \*
>
> (3) The director may promulgate further rules with respect to the affairs of the department as the director considers necessary or expedient for the proper administration of this act. The director may modify, amend, supplement, or rescind a rule.

The operative standards that limit the director's discretion in passing the rules at issue in this case are that he can only promulgate rules concerning the "management and control" of the institutions within the DOC's jurisdiction, and rules that are "necessary and expedient" for proper administration of the act. While these standards are admittedly general, because of the immense size of the system over which the DOC has authority and the myriad of situations that may arise and need to be addressed in such a vast system, in our opinion, the "management and control" and "necessary and expedient" standards are as reasonably precise as the subject matter permits. In addition, when these general standards are looked at in con-

junction with the rest of the statute, which gives more specific guidance to the director in terms of what the rules may and may not allow, we cannot say that the statute in question constitutes an unconstitutional delegation of authority or permits the director to act in an arbitrary and discriminatory fashion. See *Seaman, supra* at 313.

Petitioners further argue that if the legislative approval requirement of the APA is determined to be unconstitutional, the director will be empowered with too much discretion that will go unchecked. While we disagree with this argument, mainly because as previously indicated any rule promulgated may be revoked or suspended by a properly enacted law, the Legislature has recently amended the statute to address this situation:

> If the Michigan supreme court rules that sections 45 and 46 of the [APA] are unconstitutional, and a statute requiring legislative review is not enacted within 90 days after the Michigan Supreme Court ruling, the department shall not promulgate rules under this section. [MCL 791.206(5); MSA 28.2276(5).]

Petitioners' fear is unfounded.

### III

Next, petitioners claim that even if the delegation of authority was valid, the rules promulgated by defendant on August 10, 1995, exceed the scope of authority delegated in MCL 791.206; MSA 28.2276. Petitioners argue that the rules are arbitrary and capricious and violate a prisoner's rights to due process, free exercise of religion, and effective assistance of counsel. The trial court concluded that the rules were "properly adopted and fully in effect," but did

not address whether the rules exceeded the scope of authority delegated. On appeal, petitioners seek a remand for an evidentiary hearing so that such a determination can be made. We do not consider a remand to be necessary.

> Where as here, an agency is empowered to make rules, the validity of those rules is to be determined by a three-part test: (1) whether the rule is within the subject matter of the enabling statute; (2) whether it complies with the legislative intent underlying the enabling statute; and (3) whether it is arbitrary or capricious. [*Dykstra v Dep't of Natural Resources*, 198 Mich App 482, 484; 499 NW2d 367 (1993), citing *Luttrell v Dep't of Corrections*, 421 Mich 93, 100; 365 NW2d 74 (1984).]

Utilizing this analysis, we find that the rules promulgated on August 10, 1995, are valid.

The first question that must be addressed is whether the rules are within the subject matter of the statute. In this case, the enabling statute concerns, among other things, the control, management, and operation of the general affairs of the department, and the management and control of the state's penal institutions. MCL 791.206; MSA 28.2276. The rules at issue concern prisoner visitation and sanctions for prisoner misconduct. We find these rules to be clearly within the subject matter of the enabling statute. See *Dykstra, supra* at 485-486.

Next, we must determine if the rules in question comply with the legislative intent behind the statute. In this case, the plain language of the statute not only defines its scope and reveals its subject matter, but also manifests the legislative intent behind it. It is clear from the general language used that the Legislature was aware of the great responsibility placed on

the Department of Corrections and intended to vest the director, who is intimately familiar with the needs of and problems facing the state's penal institutions, with wide discretion to take steps necessary to control and manage the state's penal institutions. Clearly, promulgating rules for prisoner visitation and sanctions for misconduct is consistent with the Legislature's intent.

We now move on to the last prong of the *Dykstra/Luttrell* test, that is, whether the rules are arbitrary and capricious.

A rule is arbitrary if it was fixed or arrived at through an exercise of will or by caprice, without giving consideration to principles, circumstances, or significance. *Dykstra, supra* at 491. A rule is capricious if it is apt to change suddenly or is freakish or whimsical. *Id.* If a rule is rationally related to the purpose of the statute, it is neither arbitrary nor capricious. *Id.* Further, if there is any doubt about the invalidity of a rule in this regard, the rule must be upheld. *Id.* In this case, we find that the rules of August 10, 1995, are rationally related to the control and management of the state's penal institutions. The sanctions rule seeks to punish offenders, deter misconduct, and promote a controlled environment. In general, the visitation rules clearly promote efficient control of the state's penal institutions by having uniform rules applied throughout the system. While petitioner has challenged specific rules and subsections of rules, these rules are presumed valid, and we have not been persuaded beyond doubt that the challenged rules and subsections are invalid. Nor do we think it is reasonable to believe that on remand such persuasion of the trial court is possible.

While we have concluded that the rules are valid in that they are within the scope of authority delegated under the statute, the rules must still be constitutionally valid. Petitioners make several arguments in support of their position that the rules are unconstitutional. We disagree.

Prison regulations alleged to infringe constitutional rights are judged under a reasonableness test less restrictive than the test ordinarily applied to alleged infringements of fundamental constitutional rights. *Abdur-Ra'oof v Dep't of Corrections*, 208 Mich App 626, 629; 528 NW2d 840 (1995), remanded on other grounds 450 Mich 1018 (1996). Deference is to be given to the considered judgment of the prison administrators who are charged with and trained in the running of penal institutions, and the regulation is valid if it is reasonably related to legitimate penological interests. *Id.*

To the extent that petitioners argue that the visitation rules infringe on their constitutional rights to associate, the argument must fail. "Visitation with a prisoner by his friends and family are not part of those associational rights." *Faler v Lenawee Co Sheriff*, 161 Mich App 222, 228; 409 NW2d 791 (1987), citing *Thorne v Jones*, 765 F2d 1270, 1273 (CA 5, 1985). Therefore, there can be no unconstitutional infringement on the right to associate.

We also find nothing in the rules that infringes on petitioners' constitutional rights to counsel and the free exercise of religion. The rules provide that prisoners shall be able to visit with qualified members of the clergy and attorneys on official business.

Petitioners also argue that the rule that permits restitution as a sanction for misconduct violates due pro-

cess because it does not take into consideration the prisoner's ability to pay. However, as stated in *People v Music*, 428 Mich 356, 363; 408 NW2d 795 (1987), "a defendant's ability to pay restitution and costs need be determined only when a defendant asserts an inability to make such payments." Because the rules make restitution discretionary, petitioners' claim is without merit.

We have considered petitioners' other claims and we conclude that they are conclusory and without support or are simply without merit. As previously indicated, the rules are not arbitrary or capricious and are reasonably related to the control and management of the state's penal institutions. In our opinion the rules are constitutionally valid and we have not been persuaded that a remand would establish facts that would lead to a different conclusion.

### DOCKET NO. 190011

Plaintiff claims that the trial court erred in denying his motion for a preliminary injunction and dismissing his complaint seeking a permanent injunction. Plaintiff challenged the policies set forth in the March 1995 memorandum to implement department-wide visitation standards as being rules that were not promulgated in accordance with the APA. On appeal, plaintiff asks this Court to reinstate his complaint, which sought injunctive relief, and to order the trial court to issue a preliminary injunction. However, the policy that mandated department-wide visitation hours has now been promulgated as a rule, R 791.6607, and although that rule and all the other rules that became effective on August 25, 1995, did not comport with the procedures in §§ 45 and 46 of the APA, those sec-

tions have been found to be unconstitutional and compliance therefore was unnecessary. As we have previously held, these rules are valid and enforceable.

We have reviewed the record and plaintiff's other claims on appeal and conclude that injunctive relief in this matter is improper.

Affirmed.