BAZZETTA v DEPARTMENT OF CORRECTIONS DIRECTOR

Docket No. 198107. Submitted January 13, 1998, at Detroit. Decided August 4, 1998, at 9:00 A.M.

Michelle Bazzetta and others brought an action in the Wayne Circuit Court against the Director of the Department of Corrections and the department, seeking declaratory and injunctive relief with respect to prisoner visitation regulations codified at 1995 AACS, R 791.6609 on the basis that the regulations violate the plaintiffs' rights under the federal and state constitutions and violate the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.* The defendants removed the action to the United States District Court for the Eastern District of Michigan, which declined pendent jurisdiction over the state law claims and remanded them to the Wayne Circuit Court. The federal district court granted summary judgment for the defendants, 902 F Supp 765 (ED Mich, 1995), and the judgment was affirmed by the Sixth Circuit Court of Appeals, 124 F3d 774 (CA 6, 1997), supplemented 133 F3d 382 (CA 6, 1998). The Wayne Circuit Court, Diane M. Hathaway, J., granted summary disposition for the defendants with respect to the claims under the state constitution and the Civil Rights Act. The plaintiffs appealed.

The Court of Appeals *held*:

1. Those of the challenged rules that prohibit visits from former prisoners, prohibit most people from visiting more than one prisoner, prohibit certain members of inmates' immediate families from visiting, and prohibit certain minors from visiting do not violate state constitutional guarantees of equal protection, freedom of speech and association, due process, and freedom from cruel or unusual punishment because the rules are reasonably related to legitimate penological interests.

2. The absence of further discovery did not make the grant of summary disposition for the defendants erroneous because the central issue was basically one of law.

3. The plaintiffs' civil rights claim need not be evaluated separately from their equal protection claim because the standard for evaluating the civil rights claim is coterminous with constitutional equal protection standards and the equal protection claim already has been rejected by the Court of Appeals.

Affirmed.

1. PRISONS AND PRISONERS — VISITATION RULES — CONSTITUTIONAL LAW.

    Administrative rules of the Department of Corrections restricting visitation of prisoners in state penal institutions, when reasonably related to and supportive of legitimate penological interests, do not violate the constitutional rights of prisoners and visitors.

2. CIVIL RIGHTS — CIVIL RIGHTS ACT — CONSTITUTIONAL LAW — EQUAL PROTECTION.

    A civil rights claim against the state is evaluated under the standards that apply to a constitutional equal protection claim (Const 1963, art 1, § 2; MCL 37.2302; MSA 3.548[302]).

*Deborah LaBelle* and *Gail Grieger*, for the plaintiffs.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *George N. Stevenson*, and *H. Steven Langschwager*, Assistant Attorneys General, for the defendants.

Amicus Curiae:

*Stark and Gordon* (by *Carol A. Laughbaum* and *Sheldon J. Stark*), for American Civil Liberties Union of Michigan.

Before: GAGE, P.J., and REILLY and JANSEN, JJ.

PER CURIAM. Plaintiffs filed this action for injunctive and declaratory relief alleging that certain regulations restricting contact visits with prisoners incarcerated under the jurisdiction of the Department of Corrections (DOC) violated their state and federal constitutional rights and the Civil Rights Act (CRA), MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.* The plaintiff class consists of (1) individuals who are or will be incarcerated under the jurisdiction of the DOC and (2) members of the public whose visitation of incarcerated individuals is prohibited or restricted by the

challenged rules. Plaintiffs appeal as of right the circuit court order granting defendants' motion for summary disposition. We affirm.

The DOC promulgated the challenged restrictions as part of a new visitation policy that became effective in August 1995. 1995 AACS, R 791.6609 requires that a prisoner's visitors, with certain exceptions,[1] must be on an approved visitor list. The list is limited to the prisoner's immediate family members and ten other people. "Immediate family member" is defined as grandparent, parent, stepparent, spouse, mother-in-law and father-in-law, child, stepchild, grandchild, sibling, stepbrother or stepsister, or aunt or uncle if verification is provided that they served as surrogate parents. 1995 AACS, R 791.6609(9). Except for an emancipated minor, a person under the age of eighteen may not be on an approved visitor list unless the person is the child, stepchild, or grandchild of the prisoner, 1995 AACS, R 791.6609(2)(a), and then may visit only if accompanied by an adult member of the immediate family or a legal guardian, 1995 AACS, R 791.6609(5).[2] A person may be on the approved visitor list of only one prisoner to whom the visitor is not related as an immediate family member. A former prisoner may not be on a prisoner's approved visitor list unless the former prisoner is an immediate family

---

[1] 1995 AACS, R 791.6607 provides that clergy, outreach program volunteers, attorneys, legal paraprofessionals, law clerks, and official representatives of the government may visit without being on a prisoner's approved visitor list. The warden may allow a single visit between a prisoner and a person not on the list. 1995 AACS, R 791.6609(3).

[2] Children under eighteen are not permitted to visit if the parental rights of the prisoner to the child have been terminated, a court order prohibits visits, or the prisoner has been convicted of child abuse, criminal sexual conduct, or assaultive behavior against the child or the child's sibling unless the director approved the visit.

member. 1995 AACS, R 791.6609(7)(a). The director may permanently ban all visitation privileges, except with an attorney or clergy member, for specified types of misconduct. 1995 AACS, R 791.6609(11).

Plaintiffs' claims based on alleged violations of the United States Constitution were resolved in federal court. Although the action was filed in the circuit court, defendants removed the action to the United States District Court. The federal district court remanded the state law claims to the circuit court. The district court denied plaintiffs' motion for a preliminary injunction on the basis that plaintiffs could not show a likelihood of success on the merits. *Bazzetta v McGinnis*, 902 F Supp 765 (ED Mich, 1995). The court later granted defendants' motion to dismiss and for summary judgment. The Sixth Circuit Court of Appeals affirmed. *Bazzetta v McGinnis*, 124 F3d 774 (CA 6, 1997), supplemented 133 F3d 382 (CA 6, 1998).

After the district court remanded the state law claims, plaintiffs filed their second amended complaint. Defendants moved for summary disposition under MCR 2.116(C)(8) and (10). The circuit court granted the motion, relying in part on the district court's analysis of plaintiffs' federal constitutional claims, which the circuit court found "persuasive." The circuit court also rejected plaintiffs' civil rights claim.

I

Plaintiffs contend that the circuit court improperly dismissed their constitutional claims. We disagree.

Plaintiffs alleged that the DOC's rules that "prohibit visits from former prisoners, prohibit all but certain

members of the public from visiting more than one prisoner and prohibition [sic] against certain family members and denial of visits from friends and family under the age of eighteen" violates their right to equal protection. They further alleged violations of their fundamental right to integrity in family relationships, to freedom of speech and association, to due process, and to be free from cruel or unusual punishment.

This Court has previously rejected constitutional challenges to the DOC's visitation policy. In *Blank v Dep't of Corrections*, 222 Mich App 385; 564 NW2d 130 (1997), this Court considered and rejected the petitioners' challenges to 1995 AACS, R 791.6607, 791.6609, 791.6611, 791.6614, and 791.5505. The petitioners argued that the rules violated the prisoners' rights to due process, freedom of association, free exercise of religion, and effective assistance of counsel. This Court held that visitation with a prisoner by family and friends was not protected by a constitutional right to associate. Concluding that the rules "are reasonably related to the control and management of the state's penal institutions," the Court found them constitutionally valid. *Blank, supra* at 409.

The Sixth Circuit Court of Appeals has rejected these plaintiffs' challenges to the regulations under the United States Constitution. Relying on the decisions of the United States Supreme Court, the court explained that "the problems of prison administration are peculiarly for resolution by prison authorities and their resolution should be accorded deference by the courts." *Bazzetta*, 124 F3d 779. In evaluating regulations that allegedly implicate prisoners' constitutional rights, the appropriate inquiry is whether the regula-

tions are reasonably related to and supportive of legitimate penological interests. *Id.* The fact that the regulations allegedly impinged on the constitutional rights of noninmates did not change the standard used to evaluate the regulations. "Viewed from a constitutional standpoint, if, as we now hold, the prison officials properly limited the visitation rights of the prisoners because the limitations were reasonably related to legitimate penological interests, the effect of these regulations upon persons outside the prison was largely irrelevant." *Id.* at 780. The Sixth Circuit Court of Appeals upheld the district court's ruling that the regulations were constitutional.

We find the Sixth Circuit Court of Appeals' analysis of plaintiffs' constitutional claims is persuasive in resolving plaintiffs' claims under the state constitution. This Court also evaluates prison regulations that allegedly impinge on prisoners' constitutional rights to determine if the regulations are reasonably related to legitimate penological interests. *Blank, supra* at 408. We agree with the Sixth Circuit Court of Appeals that this standard should be used even where the regulations also allegedly impinge on noninmates' rights. Although we are not bound by the Sixth Circuit Court of Appeals' application of this standard in *Bazzetta,* plaintiffs have offered no compelling reason to depart from it. Therefore, because these regulations reasonably relate to prison administration and management concerns, they do not violate either the prisoner-plaintiffs' or the noninmate-plaintiffs' rights under the Michigan Constitution.

Plaintiffs argue that the trial court improperly relied on the federal district court's analysis of plaintiffs' federal constitutional claims and effectively

applied res judicata or collateral estoppel principles. We find no error. The circuit court's opinion indicates that the court viewed the federal district court's opinion as "persuasive authority." The court's analysis refutes any claim that the court believed it was legally bound by the district court's holding.

Plaintiffs suggest that the trial court erred in granting defendants' motion for summary disposition because there had not been an adequate opportunity for discovery. We disagree. As recognized by the Sixth Circuit Court of Appeals, "[t]he issue in the instant case was basically one of law, viz., were the amendments of the prison regulations reasonably related to and supportive of legitimate penological interests." *Bazzetta*, 124 F3d 779. In these circumstances, no fair chance exists that further discovery will result in factual support for the nonmoving party. *Mackey v Dep't of Corrections*, 205 Mich App 330, 333-334; 517 NW2d 303 (1994). Accordingly, we affirm the trial court's order granting defendants summary disposition with regard to plaintiffs' constitutional claims.

II

Plaintiffs contend that the trial court erred in granting defendants' motion for summary disposition of their civil rights claim. We affirm the result of the circuit court, but for a different reason.

Plaintiffs alleged that the facilities operated by the DOC are "public services and/or public accommodations" under § 301[3] of the CRA, MCL 37.2301; MSA

---

[3] Section 301(a) defines "place of public accommodation" as "a business, or an educational, refreshment, entertainment, recreation, health, or transportation facility, or institution of any kind, whether licensed or not, whose goods, services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public." MCL 27.2301(a); MSA 3.548(301)(a). "Public service" is defined by

3.548(301), and that the rules prohibiting visitation by minor siblings denies them the full and equal utilization of a public service because of age, in violation of § 302(a),[4] MCL 37.2302(a); MSA 3.548(302)(a). The trial court concluded that plaintiffs failed to state a claim for relief because defendants were exempt from article three of the CRA under § 303,[5] MCL 37.2303; MSA 3.548(303).

When a civil rights claim is brought against a state actor, courts should evaluate the claim using constitutional equal protection standards. In *Dep't of Civil Rights ex rel Forton v Waterford Twp Dep't of Parks & Recreation*, 425 Mich 173; 387 NW2d 821 (1986), the Supreme Court considered "whether the defendant township can operate a basketball program for elementary students that requires separate gender-based leagues playing at different times of the year, without violating [§ 302 of the CRA, MCL 37.2302; MSA 3.548(302)]." *Forton, supra* at 175. To answer

---

§ 301(b) as "a public facility, department, state agency, board, or commission, owned, operated, or managed by or on behalf of the state, a political subdivision, or an agency thereof, or a tax exempt private agency established to provide service to the public." MCL 27.2301(b); MSA 3.548(301)(b).

[4] "Except where permitted by law, a person shall not: (a) Deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of religion, race, color, national origin, age, sex, or marital status." MCL 27.2302(a); MSA 3.548(302)(a).

[5] This article shall not apply to a private club, or other establishment not in fact open to the public, except to the extent that the goods, services, facilities, privileges, advantages, or accommodations of the private club or establishment are made available to the customers or patrons of another establishment that is a place of public accommodation or is licensed by the state under [the Michigan liquor control act, MCL 436.1 through 436.58; MSA 18.971 through 18.1029.] This section shall not apply to a private club that is otherwise defined as a place of public accommodation in this article. [MCL 27.2303; MSA 3.548(303).]

that question, the Court determined that it had to first ascertain whether the CRA "prescribes a standard prohibiting any rulemaking by the state based on gender per se, or whether it incorporates a two-part test coterminous with constitutional equal protection standards." *Id.* After comparing § 302(a) with article 1, § 2 of the Michigan Constitution and examining legislative history, the Court concluded that the Legislature's goal in adopting § 302(a) was to broaden the scope of the coverage of the act to private action, not to change the standard of equal protection. *Forton, supra* at 188-189. Therefore, the Court evaluated the basketball program using the "middle tier end-means analysis" applicable to equal protection challenges involving a gender-based classification. *Id.* at 200.

In this case, we need not separately evaluate plaintiffs' civil rights claim because we have already rejected their equal protection claim. It is unnecessary to determine whether the DOC is exempt from the CRA under § 303. The standard for evaluating plaintiffs' civil rights claim is "coterminous with constitutional equal protection standards." *Forton, supra* at 175. We recognize that the Supreme Court left open the possibility that in a different factual setting the CRA "may provide greater rights than past or future decisions interpreting the Equal Protection Clause of either the United States or the Michigan Constitution." *Id.* at 189-190. However, we do not believe the present case warrants recognition of rights greater than those provided under traditional equal protection analysis. The dismissal of plaintiffs' civil rights claim, like plaintiffs' equal protection claim, is affirmed.

Affirmed.