MICHIGAN STATE EMPLOYEES ASSOCIATION v LIQUOR CONTROL
COMMISSION NO 2

Docket No. 200373. Submitted January 7, 1998, at Lansing. Decided
   November 6, 1998, at 9:00 A.M. Leave to appeal sought.

   The Michigan State Employees Association and others brought an
   action for declaratory and injunctive relief in the Ingham Circuit
   Court, seeking a declaration that an administrative rule promul-
   gated by the Liquor Control Commission as part of the commis-
   sion's plan to privatize the state-operated liquor warehousing and
   distribution system was unenforceable. The rule, AACS, R 436.1802,
   defined an "authorized distribution agent" (ADA) under the planned
   system. The court, James R. Giddings, J., issued a temporary
   restraining order, denied the defendant's motion for summary dis-
   position, and granted summary disposition in favor of the plaintiffs.
   The court reasoned that provisions of the Administrative Proce-
   dures Act (APA), MCL 24.201 et seq.; MSA 3.560(101) et seq., provid-
   ing for approval or veto of proposed administrative rules by the
   Legislature's Joint Committee on Administrative Rules (JCAR) repre-
   sented a valid, limited retention of control by the Legislature over
   the rule-making process. The court concluded that the defendant's
   promulgation of the rule despite the JCAR's disapproval violated the
   APA and therefore the rule was invalid. The Court of Appeals
   granted the defendant leave to appeal, dissolved the temporary
   restraining order, and stayed any further trial court proceedings
   pending resolution of the issues raised by the defendant.

   The Court of Appeal held:

   1. The sections of the APA that require JCAR or legislative approval
   of proposed rules, MCL 24.245; MSA 3.560(145), MCL 24.246; MSA
   3.560(146), violate Const 1963, arts 3 and 4 and are invalid. The
   remainder of the APA is enforceable because procedural protections
   still exist within the APA even in the absence of §§ 45 and 46.

   2. The Liquor Control Act, MCL 436.1 et seq.; MSA 18.971 et seq.,
   as amended by 1996 PA 440, while contemplating that the defend-
   ant may promulgate new rules governing ADA qualification and
   selection, does not mandate that the defendant promulgate new

rules before it may begin implementing its privatization plan by selecting ADAs. The trial court erred in denying the defendant's motion for summary disposition on the basis that the defendant was required to promulgate new rules before selecting ADA's. The orders granting summary disposition in favor of the plaintiffs and denying the defendant's motions for summary disposition must be reversed, and the matter must be remanded to the trial court for further proceedings.

Reversed and remanded.

1. ADMINISTRATIVE LAW — ADMINISTRATIVE PROCEDURES ACT — RULES — APPROVAL BY JOINT COMMITTEE ON ADMINISTRATIVE RULES — CONSTITUTIONAL LAW.

Requirements in the Administrative Procedures Act for approval by the Legislature's Joint Committee on Administrative Rules of proposed administrative rules of executive agencies are invalid because they violate the separation of powers principle established in the constitution and enable the Legislature to avoid adherence to the constitutional requirements that it legislate only by bills approved by majorities of both the Senate and the House of Representatives and that all bills passed by the Legislature must be first presented to the Governor for approval before becoming law (Const 1963, arts 3, 4; MCL 24.245, 24.246; MSA 3.560[145], 3.560[146]).

2. STATUTES — ADMINISTRATIVE LAW — ADMINISTRATIVE PROCEDURES ACT.

The Legislature enacted the Administrative Procedures Act to provide procedural protection where a personal right, duty, or privilege is at stake; the remainder of the act is enforceable when a court finds portions of the act to be invalid where procedural protections still exist within the act in the absence of the invalid provisions (MCL 24.201 *et seq.*; MSA 3.560[101] *et seq.*).

3. INTOXICATING LIQUORS — LIQUOR CONTROL ACT — AUTHORIZED DISTRIBUTION AGENTS.

The provisions of the Liquor Control Act added by 1996 PA 440 do not require the Liquor Control Commission to promulgate new rules before selecting and appointing authorized distribution agents to operate the privatized liquor warehousing and distribution system provided for by 1996 PA 440; 1996 PA 440 requires that one seeking appointment as an authorized distribution agent under a privatized system satisfy already existing and applicable licensure qualifica-

tions created by the commission pursuant to MCL 436.7; MSA 18.977.

*Fraser Trebilcock Davis & Foster, P.C.* (by *Brandon W. Zuk*), for the plaintiffs.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Mark Matus*, Assistant Attorney General, for the defendant.

Amici Curiae:

*Honigman Miller Schwartz and Cohn* (by *John D. Pirich*), for General Wine Company and General Wine and Liquor Company.

*Dykema Gossett PLLC* (by *Michael J. Brown*), for Michigan Licensed Beverage Association.

*Buesser, Buesser, Black, Lynch, Fryhoff & Graham, P.C.* (by *Timothy T. Fryhoff*), for J. Lewis Cooper Co. and NWS Michigan, Inc.

Before: MURPHY, P.J., and GRIBBS and GAGE, JJ.

GAGE, J. State liquor employee plaintiffs initiated the instant suit in response to defendant's announcement in early 1996 that it intended to privatize the state-operated liquor warehousing and distribution system, thus closing state-operated liquor warehouses and stores and terminating plaintiffs' employment. In October 1996, plaintiffs sought a declaration that an administrative rule promulgated by defendant that defined an "authorized distribution agent" (ADA) under the planned privatized liquor distribution system was unenforceable. In January 1997, the trial court issued a temporary restraining order prohibiting defendant

from closing any state-operated liquor warehouses or stores and from laying off state liquor employees. Defendant appeals by leave granted. We reverse and remand.

In furtherance of its privatization plan, defendant drafted a proposed administrative rule defining and establishing qualifications for ADAs, who would warehouse and distribute liquor under the privatized plan. Defendant complied with the then-existing rule-promulgation requirements outlined by the Administrative Procedures Act (APA), MCL 24.201 *et seq.*; MSA 3.560(101) *et seq.*, including holding a public hearing regarding the proposed rule, MCL 24.241; MSA 3.560(141), and submitting the proposed rule to the Legislative Services Bureau and the Joint Committee on Administrative Rules (JCAR), a legislative committee consisting of five senators and five representatives, MCL 24.235(1); MSA 3.560(135)(1), for approval. MCL 24.245; MSA 3.560(145). Under the statutory scheme, defendant was prohibited from promulgating or adopting its proposed rule until either (a) the Legislature by concurrent resolution approved the rule or (b) the JCAR approved the rule. MCL 24.245(9); MSA 3.560(145)(9). However, without awaiting legislative approval, defendant filed the proposed rule with the Secretary of State on September 10, 1996, thus violating APA subsections 45(9) and 46(1), MCL 24.246(1); MSA 3.560(146)(1). The JCAR subsequently advised defendant of its disapproval of the proposed rule. However, the published rule appears at 1996 AACS, R 436.1802, and became effective on September 11, 1996.

Plaintiffs filed their original complaint in October 1996. Plaintiffs alleged that defendant's promulgation of Rule 436.1802 despite the JCAR's disapproval violated APA §§ 45 and 46 and requested that the court enjoin defendant from implementing its privatization plan. Defendant moved for summary disposition on the basis that §§ 45 and 46 authorized the Legislature to act in violation of provisions of articles 3 and 4 of the 1963 Michigan Constitution, which provisions this opinion later addresses.

On December 19, 1996, the Legislature adopted 1996 PA 440. This act defined an ADA and otherwise amended the Liquor Control Act, MCL 436.1 *et seq.*; MSA 18.971 *et seq.*, to provide for the potential privatization of the state-operated liquor warehousing and distribution system. See MCL 436.2ee, 436.3, 436.3a; MSA 18.972(31), 18.973, 18.973(1).

After the enactment of 1996 PA 440, defendant filed an amended motion for summary disposition, arguing that the enactment rendered moot plaintiffs' complaint. Defendant claimed that the enactment explicitly authorized its utilization of ADAs and the implementation of its privatization plan. Plaintiffs responded that (1) different terms contained in 1996 PA 440 and defendant's proposed rule indicated that the Legislature did not approve defendant's proposed rule or repudiate the JCAR's veto of the proposed rule and (2) 1996 PA 440 mandated that, in the event defendant privatized the system, it establish rules governing authorized distribution agents before it could select or appoint such agents.

Pursuant to plaintiffs' request, the trial court on January 10, 1997, issued a temporary restraining order prohibiting defendant from appointing or utilizing ADAs and from laying off any state liquor employees or closing state liquor warehouses or stores. The trial court subsequently amended the temporary restraining order to require that defendant continue to accept and fill liquor orders under the state-operated system. The temporary restraining order was to remain in effect until January 28, 1997, when the court would determine whether to issue a preliminary injunction.

Also on January 10, 1997, the trial court denied defendant's amended motion for summary disposition. The court believed that a question existed regarding the validity of defendant's proposed rule in light of the statutory amendments regarding privatization. The court also believed that, in the event the proposed rule was invalid, defendant would likely have to adopt valid rules or take some other action before it could appoint ADAs.

The trial court also subsequently denied defendant's original motion for summary disposition, instead granting summary disposition to plaintiffs. The court reasoned that the APA provisions providing for JCAR approval or veto of proposed administrative rules represented a valid, limited retention of control by the Legislature over the rule-making process. The court concluded that defendant's promulgation of its proposed rule despite the JCAR's disapproval violated §§ 45 and 46 and that the proposed rule was therefore invalid.

Defendant filed several motions with this Court on January 13, 1997, including a motion for a stay of the temporary restraining order and an emergency application for leave to appeal. On January 21, 1997, in an unpublished order, this Court granted defendant's application for leave to appeal and dissolved the trial court's temporary restraining order, on the basis that plaintiffs had failed to demonstrate that they would suffer irreparable harm absent injunctive relief.

On January 28, 1997, in an unpublished order, this Court stayed any further trial court proceedings in this matter pending our resolution of the issues raised in defendant's application for leave to appeal. We now consider those issues.

Defendant first argues that APA §§ 45 and 46, which require JCAR or legislative approval of proposed rules, are unconstitutional and therefore it need not have awaited JCAR approval of its proposed rule before promulgating and implementing the rule. Defendant contends that §§ 45 and 46 violate the following provisions of the Michigan Constitution: (1) article 3, § 2, the provision establishing a separation of legislative, judicial, and executive powers, (2) article 4, §§ 1 and 22, vesting legislative power in a Senate and House of Representatives, and requiring that all legislation arise by bill, (3) article 4, § 26, providing that no bill may become a law until approved by a majority of each house of the Legislature, (4) article 4, § 33, requiring presentation of all bills to the Governor before they may become law, and (5) article 4, § 37, which permits the Legislature to "empower a joint committee . . . acting between sessions, to suspend any rule or reg-

ulation promulgated by an administrative agency subsequent to the adjournment of the last preceding regular legislative session. Such suspension shall continue no longer than the end of the next regular legislative session." We review the constitutionality of a statute, which is a question of law, under the de novo standard. *Sills v Oakland General Hosp*, 220 Mich App 303, 311; 559 NW2d 348 (1996).

This Court has recently addressed the constitutionality of §§ 45 and 46 in *Blank v Dep't of Corrections*, 222 Mich App 385; 564 NW2d 130 (1997), and concluded that these provisions violate articles 3 and 4 of the Michigan Constitution. In *Blank*, several Michigan prison inmates challenged the validity of administrative rules promulgated by the Department of Corrections that established new prison visitation policies. *Id.* at 389. The Department of Corrections had promulgated and begun enforcing the administrative rules at issue without having first obtained JCAR or legislative approval as required by §§ 45 and 46. *Blank, supra* at 390. The prison inmates claimed that the visitation rules were invalid because the Department of Corrections failed to adhere to the APA's rulemaking provisions. *Id.* at 391. The department countered that §§ 45 and 46 were unconstitutional. *Blank, supra.*

The *Blank* Court agreed that §§ 45 and 46 violated article 4 of the Michigan Constitution. *Blank, supra* at 397-398. While the Court recognized that the Legislature could properly delegate rule-making authority to administrative agencies, it noted that the Legislature could only subsequently interfere with such delegated

authority according to constitutionally prescribed law-making procedures. *Id.* at 396. The Court concluded that §§ 45 and 46 enabled the Legislature to avoid adherence to the constitutional requirements that it legislate only by bills (Const 1963, art 4, § 22) approved by majorities of both the Senate and the House of Representatives (Const 1963, art 4, § 26), and the requirement that all bills passed by the Legislature must be first presented to the Governor for approval before becoming law (Const 1963, art 4, § 33). *Blank, supra* at 396-397. The Court reasoned as follows:

> Because the procedures in § 45 do not mirror the requirements of article 4 of our constitution, the Legislature is interfering with the delegated authority by something short of a "law." By giving the JCAR the authority to veto administrative rules proposed by an executive agency, the Legislature has delegated legislative power to a smaller legislative body that can effectively negate a valid action of an agency without following the restrictions of article 4 of our constitution. Although administrative rules have the force and effect of law, when an agency makes rules, it is not "legislating," and therefore not bound by the requirements of article 4, because it must act pursuant to and within the confines of the legislative delegation of power. However, when the JCAR acts, it has the power to speak on the subject at issue without any specified limitations and, in accordance with its own will, it is essentially "legislating" without the confines of article 4. The Legislature may not do indirectly what it cannot do directly. Even when the Legislature acts by concurrent resolution, it is not making "law." Such resolutions are not "bills" and are not presented to the Governor for approval as required by article 4 of our constitution. [*Blank, supra* at 397 (citations omitted).]

The Court noted that its holding that §§ 45 and 46 were unconstitutional aligned Michigan with the majority of other states who had considered the constitutionality of similar legislative review processes. *Blank, supra* at 393, n 2, 394-395. Because § 45's JCAR and legislative resolution rule-approval procedures were determined to be unconstitutional, § 46's prohibition against filing proposed rules with the Secretary of State without accompanying certificates of legislative approval was rendered a nullity. *Blank, supra* at 398.

The *Blank* Court also concluded that §§ 45 and 46 violated the separation of powers principle established within article 3, § 2 of the constitution. The Court found that the absence of a provision requiring presentment to the Governor of a legislative veto of proposed rules created the type of unchecked legislative power that article 3, § 2 sought to avoid. *Blank, supra.*

We agree with the *Blank* Court that §§ 45 and 46 violate articles 3 and 4 of the Michigan Constitution, and we adopt the *Blank* Court's reasoning. Therefore, defendant's failure to comply with these unconstitutional provisions does not invalidate its promulgated rule.

Like the state prison inmates in *Blank*, plaintiffs contend that §§ 45 and 46, if declared unconstitutional, may not be severed from the APA because legislative review of proposed rules represents a primary APA objective. Plaintiffs claim that therefore the entire APA must be discarded in light of our determination

that §§ 45 and 46 violate articles 3 and 4 of the constitution. We disagree.

MCL 8.5; MSA 2.216 directs that when a court finds a portion of an act invalid, the remainder of the act should be enforced to the extent that it can be given effect consistent with the legislative intent behind the act. In enacting the APA, the Legislature intended to "provide procedural protection where a personal right, duty or privilege is at stake." *Midland Twp v State Boundary Comm*, 401 Mich 641, 671; 259 NW2d 326 (1977); *Blank, supra* at 402. Therefore, because procedural protections still exist within the APA even in the absence of §§ 45 and 46, in the form of public notice and public hearing requirements regarding proposed rules, see MCL 24.241-24.244; MSA 3.560(141)-3.560(144), the remainder of the APA remains enforceable. *Blank, supra.*

Furthermore, even assuming as plaintiffs suggest that legislative veto power over proposed rules constituted a primary APA objective, the Legislature may still exercise veto power over proposed rules without relying on §§ 45 and 46. As subsection 51(b), MCL 24.251(b); MSA 3.560(151)(b) recognizes, the Legislature may enact a bill, passed by a majority of both houses and presented to the Governor, that revokes a proposed rule with which it disagrees. *Blank, supra.* Pursuant to subsection 51(a), MCL 24.251(a); MSA 3.560(151)(a), the Legislature may also adopt a resolution expressing its disapproval of a rule in the hope that the promulgating agency would acknowledge the legislative disapproval and amend the rule accordingly. Finally, article 4, § 37 of the constitution grants

the Legislature the limited authority between legislative sessions to suspend by concurrent resolution the enforcement of rules promulgated by agencies after the end of a legislative session. As the *Blank* Court noted, this narrow constitutional delegation of legislative power by resolution supports the conclusion that, other than between sessions, the Legislature must legislate as article 4 of the constitution prescribes. *Blank, supra* at 399-401.

Defendant next contends that even if its promulgated rule is invalid because of its failure to comply with §§ 45 and 46, 1996 PA 440 authorized it to select and appoint ADAs without first having promulgated an administrative rule regarding ADAs. Although we are not required to address this issue in light of our resolution of defendant's first argument, we take this opportunity to address the important new statutory provisions involved. We conclude that the Liquor Control Act, while contemplating that defendant may promulgate rules governing ADA qualification and selection, does not mandate that defendant promulgate rules before it may begin implementing its privatization plan by ADA selection.

None of the provisions of the Liquor Control Act added by 1996 PA 440 require that defendant promulgate new rules. Section 2ee of the Liquor Control Act merely defines an ADA as a person approved by defendant to engage in certain enumerated activities. Section 3 indicates that the sale, delivery, or importation of liquor may be performed by, among others, an ADA approved by defendant. Subsection 3a(1) indicates that if defendant decides to implement a priva-

tization plan, it "shall . . . by order appoint authorized distribution agents to engage in the warehousing and delivery of spirits," which ADAs will be "subject to uniform requirements, including business operating procedures, which [defendant] *may* prescribe by rule. . . ." Our review of this statutory language, in light of the fact that "shall" usually designates a mandatory provision, while "may" ordinarily designates a permissive provision, *Jordan v Jarvis*, 200 Mich App 445, 451; 505 NW2d 279 (1993), leads us to conclude that the Legislature did not intend to mandate that defendant promulgate rules before selecting and appointing ADAs. We reject as unreasonable plaintiffs' suggestion that "may" should be interpreted as mandatory, because nothing in the context of this statutory provision supports such an interpretation. *Mull v Equitable Life Assurance Society of the United States*, 444 Mich 508, 519; 510 NW2d 184 (1994).

Nor do we accept plaintiffs' contention that § 7 of the Liquor Control Act, MCL 436.7; MSA 18.977, mandates that defendant promulgate rules as a prerequisite to its selection and appointment of ADAs. Section 7 provides that defendant "*shall* adopt rules and regulations governing the carrying out of this act and the duties and responsibilities of licensees in the proper conduct and management of their licensed places." (Emphasis added.) Defendant has, as § 7 requires, adopted many rules implementing the Liquor Control Act and governing the selection and conduct of liquor license holders. See licensing qualification rules in the 1979 Michigan Administrative Code and 1980-1996

Annual Supplements, Rule 436.1101 *et seq.* Subsection 3a(2)(a) explains that one becomes eligible for ADA appointment on satisfying several conditions, including that the "person satisfies all applicable commission rules prescribing qualifications for licensure promulgated under section 7." Subsection 3a(2)(a)'s reference to § 7 does not indicate that defendant must adopt preprivatization rules. By its terms, subsection 3a(2)(a) merely requires that one seeking ADA appointment satisfy already existing and applicable licensure qualifications that defendant had created pursuant to § 7. Subsection 3a(2)(a)'s requirement that potential ADAs satisfy any applicable licensure rules ensures that the already existing rules apply to this section and that defendant may not select ADAs without applying standards. Therefore, we conclude that the trial court erred in denying defendant's amended motion for summary disposition on the basis that defendant was required to promulgate rules before selecting ADAs.

We reverse the trial court's orders granting plaintiffs summary disposition and denying defendant's motions for summary disposition.

Remanded to the Ingham Circuit Court for any further proceedings consistent with this opinion. We do not retain jurisdiction.

Reversed and remanded.