COUNTY ROAD ASSOCIATION OF MICHIGAN v GOVERNOR

Docket No. 245767. Submitted December 10, 2003, at Lansing. Decided January 13, 2004, at 9:00 A.M. Leave to appeal sought.

The County Road Association of Michigan and the Chippewa County Road Commission brought an action in the Ingham Circuit Court, William E. Collette, J., against the Governor and others, challenging the constitutionality of Executive Order No. 2001-9, which for the fiscal year ending September 30, 2002, reduced by $12.75 million the amount to be deposited to the Comprehensive Transportation Fund (CTF) from twenty-five percent of the general sales taxes imposed on the sale of motor vehicles and motor vehicle fuel, parts, and accessories, and transferred the $12.75 million to the state general fund. The Governor issued the order pursuant to authority granted by Const 1963, art 5, § 20 in an effort to reduce state expenditures. Const 1963, art 9, § 9 provides that not more than twenty-five percent of the general sales taxes imposed on the sale of motor vehicles and motor vehicle fuel, parts, and accessories shall be used exclusively for comprehensive transportation purposes. The CTF was created by 1982 PA 438 to receive tax revenues earmarked for comprehensive transportation purposes. The Michigan Public Transit Association and others intervened as plaintiffs and successfully moved for a preliminary injunction preventing the transfer of funds on the grounds that the transfer would violate art 9, § 9. The defendants appealed by leave granted, and the Court of Appeals stayed the preliminary injunction.

The Court of Appeals *held*:

1. The general sales tax revenues at issue are not constitutionally dedicated funds and are subject to executive order expenditure reductions. Art 9, § 9 provides for the distribution of revenues from two types of taxes. The first type, specific taxes that are constitutionally dedicated to transportation purposes and protected from expenditure reductions by executive order, are not at issue in this case. The second type is that which is collected from the general sales tax and is at issue in this case. The language of art 9, § 9 is ambiguous in that it unequivocally exempts all general sales taxes from the restrictions imposed on specific taxes but then simultaneously subjects up to twenty-five percent of general sales taxes to

the very same restrictions. In light of the language and history of art 9, § 9 and the circumstances surrounding its amendment in 1978, art 9, § 9 is not a self-executing provision that governs constitutionally dedicated funds that are exempt from the Governor's authority under art 5, § 20.

2. The trial court abused its discretion by granting the preliminary injunction in the absence of a showing by the intervening plaintiffs that they are likely to prevail on the merits of their claim.

Reversed and remanded for entry of judgment in favor of the defendants.

CONSTITUTIONAL LAW — TAXATION — GENERAL SALES TAX — MOTOR VEHICLES — COMPREHENSIVE TRANSPORTATION FUND.

Revenues from the general sales tax imposed on the sale of motor vehicles and motor vehicle fuel, parts, and accessories deposited to the Comprehensive Transportation Fund are not constitutionally dedicated and may be diverted to the state general fund by executive order of the Governor (Const 1963, art 5, § 20, art 9, § 9).

*Fraser Trebilcock Davis & Dunlap, P.C.* (by *Michael C. Levine*), for County Road Association of Michigan and Chippewa County Road Commission.

*Honigman Miller Schwartz and Cohn LLP* (by *John D. Pirich* and *Angela M. Brown*) for Michigan Public Transit Association and others.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Patrick F. Isom* and *John F. Szczubelek*, Assistant Attorneys General, for the Governor and others.

Amici Curiae:

*Loomis, Ewert, Parsley, Davis & Gotting, P.C.* (by *David M. Lick, Jeffrey W. Bracken*, and *Ronald W. Bloomberg*), for Michigan Road Builders Association and Association of Underground Contractors.

Before: TALBOT, P.J., and OWENS and FORT HOOD, JJ.

TALBOT, P.J. At issue is $12.75 million, which represents a portion of the revenues collected from the four-percent general sales tax imposed on the sale of motor vehicles and motor vehicle fuel, parts, and accessories. According to MCL 205.75, a specific portion of the general sales tax revenues is appropriated to the state Comprehensive Transportation Fund (CTF). In fiscal year 2001-2002, former Governor John Engler issued an executive order to reduce state expenditures. The executive order directed the transfer of $12.75 million from the CTF to the state general fund. Plaintiffs and intervening plaintiffs, a group of agencies and authorities who benefit from the general sales tax revenues appropriated to the CTF, challenged the transfer, arguing that the portion of the general sales tax revenues that is appropriated to the CTF is constitutionally dedicated, Const 1963, art 9, § 9, and thus immune from executive order expenditure reduction. The trial court issued an order granting intervening plaintiffs a preliminary injunction enjoining the transfer. We stayed the preliminary injunction and granted defendants leave to appeal to address the issue. We conclude that the amount of general sales tax revenues appropriated to the CTF is not constitutionally dedicated and is thus subject to executive order expenditure reductions. Accordingly, we vacate the preliminary injunction and remand the case for entry of a judgment in defendants' favor.

### I. FACTS AND PROCEDURAL HISTORY

Const 1963, art 9, § 9 governs the spending of the tax revenues collected from the four-percent general sales tax imposed on the sale of motor vehicles and motor vehicle fuel, parts, and accessories. Article 9,

§ 9 provides that *no more* than twenty-five percent of the revenues shall be used exclusively for comprehensive transportation purposes. The General Sales Tax Act, MCL 205.51 *et seq.*, details the distribution scheme for the revenues. During fiscal year 2001-2002, MCL 205.75(4) apportioned only 27.9% of the twenty-five percent of the revenues to the CTF.[1] The statute directed the remaining balance of the general sales tax revenues to the state general fund.

At the beginning of the 2001-2002 fiscal year, it became apparent to Governor Engler that actual revenues for the fiscal year would fall below the revenue estimates upon which the appropriations for that period were based. Relying on Const 1963, art 5, § 20, the Governor issued Executive Order No. 2001-9 to reduce state expenditures by $319 million. The expenditure reduction plan called for the transfer of $144 million from different funds to the state general fund.

Plaintiffs, a group of governmental agencies that were affected by the expenditure reductions, filed suit to challenge the constitutionality of the executive order with respect to a number of reductions, including the transfer of $12.75 million in the general sales tax revenues from the CTF to the state general fund.[2] Intervening plaintiffs requested preliminary injunctive relief to prohibit the transfer of the $12.75 million from the CTF, which the trial court granted.

---

[1] The CTF was created by 1982 PA 438 to receive the tax revenues.

[2] This appeal is submitted together with a separate appeal from defendants related to one of plaintiffs' claims in this case. *Co Rd Ass'n of Michigan v Governor*, unpublished opinion per curiam of the Court of Appeals, issued January 13, 2004 (Docket No. 245931).

## II. STANDARD OF REVIEW

We review a trial court's decision to grant a preliminary injunction for an abuse of discretion. *Alliance for Mentally Ill of Michigan v Dep't of Community Health*, 231 Mich App 647, 661; 588 NW2d 133 (1998). Constitutional questions are reviewed de novo. *In re Hawley*, 238 Mich App 509, 511; 606 NW2d 50 (1999). An issue of statutory interpretation presents a question of law that is also reviewed de novo. *Ronan v Michigan Pub School Employees Retirement Sys*, 245 Mich App 645, 648; 629 NW2d 429 (2001). The primary goal of statutory interpretation is to ascertain and give effect to the intent of the Legislature. *Id.*

## III. ANALYSIS

As outlined above, the issue before us is whether the general sales tax revenues that are appropriated to the CTF are constitutionally dedicated pursuant to Const 1963, art 9, § 9 and thus immune from executive order expenditure reductions.

The Governor's authority to reduce state expenditures derives from Const 1963, art 5, § 20, which provides:

> No appropriation shall be a mandate to spend. The governor, with the approval of the appropriating committees of the house and senate, shall reduce expenditures authorized by appropriations whenever it appears that actual revenues for a fiscal period will fall below the revenue estimates on which appropriations for that period were based. Reductions in expenditures shall be made in accordance with procedures prescribed by law. The governor may not reduce expenditures of the legislative and judicial branches or from funds constitutionally dedicated for specific purposes.

It is undisputed in this case that the Governor followed three of the four directives mandated by art 5, § 20. The parties agree that the Governor followed the appropriate procedures for issuing the executive order pursuant to MCL 18.1391. It is undisputed that it appeared to the Governor that actual revenues for a fiscal period would fall below the revenue estimates on which appropriations for that period were based. Further, the executive order was issued with the concurrence of the appropriations committees of the House and Senate. The dispute in this case is whether the general sales tax revenues apportioned to the CTF are constitutionally dedicated funds.

The revenues collected from the general sales tax are governed by Const 1963, art 9, § 9, which provides in pertinent part:

> All specific taxes, *except general sales and use taxes and regulatory fees*, imposed directly or indirectly on fuels sold or used to propel motor vehicles upon highways and to propel aircraft and on registered motor vehicles and aircraft shall, after the payment of necessary collection expenses, be used exclusively for transportation purposes as set forth in this section.

> \*     \*     \*

> Amount used for transportation purposes. The balance, if any, of the specific taxes, *except general sales and use taxes and regulatory fees*, imposed directly or indirectly on fuels sold or used to propel motor vehicles upon highways and on registered motor vehicles, after the payment of necessary collection expenses; . . . *and not more than 25 percent of the general sales taxes, imposed directly or indirectly on fuels sold to propel motor vehicles upon highways, on the sale of motor vehicles, and on the sale of the parts and accessories of motor vehicles, after the payment of necessary collection expenses; shall be used exclusively*

*for the transportation purposes of comprehensive trans-
portation purposes as defined by law.* [Emphasis added.]

The above constitutional provision provides for the
distribution of revenues from two types of taxes. The
first type, specific taxes, is not at issue. It is well-
established that specific tax revenues are constitu-
tionally dedicated and protected from expenditure
reductions by executive order. See, generally, *Co Rd
Ass'n of Michigan v Bd of State Canvassers*, 407
Mich 101; 282 NW2d 774 (1979); and *Southeastern
Michigan Transportation Auth v Secretary of State*,
104 Mich App 390; 304 NW2d 846 (1981) *(SEMTA)*.

The second type of tax revenues is that collected
from the general sales tax. The general sales tax is
the four-percent tax imposed on the sale of motor
vehicles and the sale of motor vehicle fuel, parts, and
accessories. MCL 205.75(4). "[T]he words 'general
sales and use taxes' appearing in Const 1963, art 9,
§ 9, [do] not encompass any tax on the use of an arti-
cle or product but instead were limited to taxes
which are complementary to the sales tax," *SEMTA,
supra* at 401.

The words "general sales taxes" are referenced
three times in the pertinent part of art 9, § 9, as
emphasized above. In the first paragraph of art 9, § 9,
general sales taxes are expressly exempted from the
restrictions imposed on the constitutionally dedicated
specific taxes. In the beginning of the second perti-
nent paragraph of art 9, § 9, they are similarly
exempted from such restrictions. However, the last
part of that paragraph subjects part of the general
sales tax revenues to the same restrictions imposed
on specific sales tax revenues, as follows:

> . . . and not more than 25 percent of the general sales taxes, imposed directly or indirectly on fuels sold to propel motor vehicles upon highways, on the sale of motor vehicles, and on the sale of the parts and accessories of motor vehicles, after the payment of necessary collection expenses; shall be used exclusively for the transportation purposes of comprehensive transportation purposes as defined by law. [Const 1963, art 9, § 9.]

In interpreting a provision of the Michigan Constitution, words of that provision "must be given their ordinary meanings." *Lapeer Co Clerk v Lapeer Circuit Court*, 469 Mich 146, 155-156; 665 NW2d 452 (2003). According to the plain language of art 9, § 9, no more than twenty-five percent of the general sales taxes "shall" be "exclusively" used for comprehensive transportation purposes, while the remaining balance goes to the state general fund. It is well-established that the use of the word "shall" rather than "may" indicates a mandatory, rather than discretionary, action. *Omne Financial, Inc v Shacks, Inc*, 460 Mich 305, 318; 596 NW2d 591 (1999). The word "exclusive" means "limited to that which is designated." *Random House Webster's College Dictionary* (1997). Thus, this part of the language of art 9, § 9 provides that once the Legislature apportions a certain percentage not exceeding twenty-five percent of the general sales tax to the CTF, the funds shall be used exclusively for comprehensive transportation services.

We conclude that the language of art 9, § 9 is ambiguous. It unequivocally exempts *all* general sales taxes from the restrictions imposed on specific taxes but then simultaneously subjects *up to twenty-five percent* of general sales taxes to the very same restrictions.

The primary source for ascertaining the meaning of the Michigan Constitution is its plain language as understood by its ratifiers when it was adopted. *Traverse City School Dist v Attorney General*, 384 Mich 390, 405; 185 NW2d 9 (1971). When a constitutional provision is subject to alternative interpretations, its intent may be gleaned from the circumstances under which it was written and it may be construed in light of its history, purpose, and surrounding circumstances. *Committee for Constitutional Reform v Secretary of State*, 425 Mich 336, 340; 389 NW2d 430 (1986); *Traverse City School Dist, supra.* "[W]herever possible an interpretation that does not create constitutional invalidity is preferred to one that does." *Traverse City School Dist, supra* at 406.

The historical development of art 9, § 9 sheds light on the cause of the ambiguity. In 1938, Const 1908, art 10, § 22 was amended. The amendment provided that taxes imposed on the sale of motor vehicles and motor vehicle fuel, except for general sales taxes, were to be used exclusively for highway purposes. In 1963, art 10, § 22 was adopted in Const 1963, art 9, § 9, with only minor revisions. See, generally, *Co Rd Ass'n of Michigan, supra.* As it then read, the last portion of art 9, § 9, which subjects no more that twenty-five percent of the general sales taxes to the same restrictions as specific sales taxes, did not exist. Rather, that portion was introduced in 1978, when the Legislature approved House Joint Resolution F to amend art 9, § 9. House Joint Resolution F was approved by the voters in the November 1978 election and is the present mandatory language of art 9, § 9. *SEMTA, supra* at 396. As this Court explained, House Joint Resolution F was developed to allay the fears of

specific tax revenues being diverted from their traditional use for conventional highway purposes upon competing demands by proponents of public transportation:

> In 1976, when the Legislature broadened the definition of highway purposes to include public transportation, rapid transit vehicles, people movement, and railroad cars—this being permitted under article 9, § 9, as it then read—road contractors, suppliers of road building machinery and equipment, and manufacturers of automobiles and auto parts became alarmed that unless article 9, § 9 was amended massive appropriations for mass transportation would be made from the earmarked taxes which traditionally had been used for building and maintaining highways. Conversely, proponents of mass transportation moved to have even greater appropriations made from the earmarked funds.
>
> By placing a ceiling on the total or aggregate amount of earmarked revenues which could be diverted to public transportation and similar purposes, the fears of the road building and automobile interests could be allayed. This is precisely what House Joint Resolution F did. It placed a top limit on the amount of money which could be diverted from conventional highway purposes to comprehensive highway purposes. The important point, for purposes of this case, is that the competing interests were concerned with total dollar amounts. They compromised their differences by placing limits in aggregate amounts. Based on the circumstances under which House Joint Resolution F was written and approved by the people, we conclude that article 9, § 9 imposes its limitations in the aggregate and that as long as the SEMTA taxes distributed under [MCL 124.416a(3)] do not exceed 10% of all of the constitutionally earmarked taxes on motor vehicles and motor fuels, § 16a(3) is not unconstitutional. In our opinion, Const 1963, art 9, § 9, as amended, does not require that 90% of each tax governed by that section be spent for conventional highway purposes. [*SEMTA, supra* at 403-404.]

The circumstances that led to the amendment of art 9, § 9 in 1978 indicate that specific sales taxes and general sales taxes are not intended to be similarly treated but are intended to remain as separate and as apart as they had before the 1978 amendment. This is evident in the different distribution schemes for the two types of taxes. The more flexible distribution scheme of the general sales taxes that allows for legislative discretion is in sharp contrast to the distribution scheme of the specific taxes that allows no room for legislative action. Further, revenues from the special taxes are not allowed to flow into the state general fund as are the revenues from the general sales taxes. Rather, only the balance of specific sales taxes, if any, flow into the CTF for conventional use. To accommodate the interests of public transportation proponents, the 1978 amendment merely left to the Legislature the discretion to determine the amount of general sales taxes to be appropriated to the CTF, the only restriction being that such allocation does not exceed twenty-five percent of the entire revenue from the general sales taxes. Thus, art 9, § 9 does not similarly treat the specific sales tax revenues and the general sales tax revenues. Contrary to intervening plaintiffs' argument on appeal, the Legislature may decide to appropriate nothing from the general sales tax revenues to the CTF and still comply with the plain language of Const 1963, art 9, § 9.

Accordingly, in light of the language and history of Const 1963, art 9, § 9 and the circumstances surrounding its amendment in 1978, we disagree with intervening plaintiffs' argument that art 9, § 9 is a self-executing appropriation of funds with respect to general sales taxes. Only funds governed by self-execut-

ing provisions are entitled to the status of "constitutionally dedicated funds" exempt from the Governor's authority under Const 1963, art 5, § 20. A constitutional provision is not self-executing, unless it alters the rule that legislative action is necessary to appropriate funds. *Musselman v Governor*, 448 Mich 503, 523; 533 NW2d 237 (1995).

The fact that legislative action is necessary to appropriate funds to the CTF is demonstrated by the language of MCL 205.75(4), which appropriates a portion of the general sales tax at issue for transportation purposes. During fiscal year 2001-2002, MCL 205.75(4)[3] clearly provided that a least 29.7 percent of twenty-five percent of the general sales taxes must be allocated to the CTF while the remaining balance goes to the state general fund:

> For the fiscal year ending September 30, 1988 and each fiscal year ending after September 30, 1988, of the 25% of the collections of the general sales tax imposed at a rate of 4% directly or indirectly on fuels sold to propel motor vehicles upon highways, on the sale of motor vehicles, and on the sale of the parts and accessories of motor vehicles by new and used car businesses, used car businesses, accessory dealer businesses, and gasoline station businesses as classified by the department of treasury remaining after the allocations and distributions are made pursuant to subsections (2) and (3), the following amounts shall be deposited each year into the respective funds:
>
> (a) Not less than 27.9% to the comprehensive transportation fund. However, for the fiscal year ending September 30, 1991 only, the amount to be deposited in the comprehensive transportation fund shall be reduced by $1,500,000.00.
>
> (b) The balance to the state general fund.

---

[3] MCL 205.75(4) was subsequently amended by 2003 PA 139.

Because MCL 205.75 is generally not limited to a particular fiscal year, the statute is characterized as a standing appropriation. Our Supreme Court has previously considered and rejected the argument that standing appropriations such as MCL 205.75 are exempt from the Governor's authority under Const 1963, art 5, § 20. See *Mich Ass'n of Cos v Dep't of Mgt & Budget*, 418 Mich 667, 675-676; 345 NW2d 584 (1984), and *Oakland Schools Bd of Ed v Superintendent of Pub Instruction*, 392 Mich 613, 620-621; 221 NW2d 345 (1974).[4] The Court concluded that accepting the interpretation the intervening plaintiffs advocated in that case, similar to that argued by intervening plaintiffs in this case,

> would violate the spirit if not the letter of these constitutional provisions. The Legislature would be, in effect, appropriating in advance of its ability to accurately forecast available revenues and would thereby be unable to match revenue with appropriations as required by Const 1963, art 4, § 31. In addition, such prospective appropriations would force the Governor to approve or veto the expenditure far in advance of his ability to assess the fiscal needs of the state. [*Oakland Schools Bd of Ed, supra* at 621; see also *Advisory Opinion on Constitutionality of 1975 PA 227*, 396 Mich 465, 501-502; 242 NW2d 3 (1976).]

In light of the above analysis, we conclude that the general sales tax revenues at issue are not constitutionally dedicated funds. We are unable to find anything in the legislative history of the 1978 amendment, or the authority cited by intervening plaintiffs or amici curiae to cause us to reach a different conclu-

---

[4] MCL 205.75 has been amended several times since the time of the decisions in *Mich Ass'n of Cos, supra,* and *Oakland Schools Bd of Ed, supra.* The amendments do not affect our decision.

sion. Rather, a different conclusion would run afoul with the language of art 9, § 9 and the circumstances of the 1978 amendment. Accordingly, the general sales tax revenues within the CTF are subject to executive order expenditure reductions.

### IV. APPLICATION

In deciding whether to grant a preliminary injunction, a court must consider (1) the likelihood that the party seeking the preliminary injunction will prevail on the merits, (2) the danger that party will suffer irreparable harm if the injunction is not issued, (3) the risk that the party would be harmed more by the absence of an injunction than the opposing party would be by the granting of the injunction, and (4) the harm to the public interest if the injunction is issued. *Fruehauf Trailer Corp v Hagelthorn*, 208 Mich App 447, 449; 528 NW2d 778 (1995).

Intervening plaintiffs cannot establish the likelihood that they would prevail on the merits for purposes of the preliminary injunction at issue. The executive order distributed the general sales tax as follows:

> Not less than 27.9% [of 25% of the general sales tax] to the comprehensive transportation fund. . . . FOR THE FISCAL YEAR ENDING SEPTEMBER 30, 2002, THE AMOUNT TO BE DEPOSITED IN THE COMPREHENSIVE TRANSPORTATION FUND SHALL BE REDUCED BY $12,750,000.00 AND THAT AMOUNT SHALL BE TRANSFERRED TO THE UNAPPROPRIATED BALANCE OF THE GENERAL FUND FOR THE FISCAL YEAR ENDING SEPTEMBER 30, 2002. THE FOLLOWING COMPREHENSIVE TRANSPORTATION FUND ACCOUNTS ARE REDUCED BY $12,750,000.00 FOR THE FISCAL YEAR ENDING SEPTEMBER 30, 2002 . . . . [Emphasis in original.]

Thus, the executive order directed a $12.75 million reduction in the amount of general sales tax revenue allocated to the CTF for fiscal year 2001-2002 from the general sales tax imposed on the sale of motor vehicles, and the sale of motor vehicle fuel, parts, and accessories. As previously discussed, the general sales tax revenues appropriated to the CTF are not constitutionally dedicated. Accordingly, they are subject to the power of the Governor to reduce expenditures as provided for by Const 1963, art 5, § 20.

Intervening plaintiffs argue that the executive order includes language that purports to amend MCL 205.75, in violation of the Governor's authority under MCL 18.1391. An executive order is entitled to the same presumption of constitutionality that a statute enjoys and, thus, should be construed as constitutional unless its unconstitutionality is clearly apparent. *Straus v Governor*, 459 Mich 526, 534; 592 NW2d 53 (1999). If a portion of an act is invalid, a court should enforce the remainder to the extent that it can be given effect consistent with the legislative intent underlying the act. *Michigan State Employees Ass'n v Liquor Control Comm*, 232 Mich App 456, 466; 591 NW2d 353 (1998).

The executive order expressly includes language that purports to amend MCL 205.75 to allow the expenditure reduction of $12.75 million. Even assuming that the Governor acted beyond his constitutional authority, this is immaterial because the pertinent language can be severed while leaving intact the critical language that directs the permissible one-time reduction in funding for the CTF. Notably, the only "amendment" that the executive order purported to make to MCL 205.75 was to accomplish this permissible reduc-

tion. Given the obligation to construe the executive order as constitutional if possible, it would make no sense to invalidate the entire provision merely because it may have been inartfully phrased. Thus, we conclude that this does not invalidate the reductions at issue.

We conclude that the trial court abused its discretion when it determined that it was likely that intervening plaintiffs would prevail on the merits. We reverse the trial court's preliminary injunction. Further, the parties have argued the merits of their position on this question of law before this Court. To conserve judicial resources and save the parties the expense of unnecessary litigation on remand, MCR 7.216(A)(7), we direct the trial court on remand to enter a judgment on the merits of this case. In light of our conclusion, we need not address the remaining issues on appeal, which relate to the three other factors to be considered by a trial court in determining whether to issue an order for a preliminary injunction.

The trial court's order granting a preliminary injunction is reversed. We remand this case and direct the trial court to enter a judgment in favor of defendants on the merits. Because the subject of this appeal is a question of public interest, no costs are awarded. We do not retain jurisdiction.