**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

**FILED NOVEMBER 8, 2005**

COUNTY ROAD ASSOCIATION OF
MICHIGAN and CHIPPEWA COUNTY
ROAD COMMISSION,

 Plaintiffs-Appellees

and

MICHIGAN PUBLIC TRANSIT ASSOCIATION,
ANN ARBOR TRANSPORTATION
AUTHORITY, CAPITAL AREA
TRANSPORTATION AUTHORITY, and
SUBURBAN MOBILITY AUTHORITY FOR
REGIONAL TRANSPORTATION,

 Intervening Plaintiffs-Appellants,

v              No. 125665

GOVERNOR OF MICHIGAN, DIRECTOR OF
THE DEPARTMENT OF TRANSPORTATION,
DEPARTMENT OF TRANSPORTATION,
DIRECTOR OF THE DEPARTMENT OF
MANAGEMENT AND BUDGET,
DEPARTMENT OF MANAGEMENT AND
BUDGET, STATE BUDGET DIRECTOR,
STATE TREASURER, DEPARTMENT OF
TREASURY, SECRETARY OF STATE, and
STATE OF MICHIGAN,

 Defendants-Appellees.

_____

PER CURIAM.

This case involves the authority of the Governor, exercised in Executive Order No. 2001-9, to reduce the Legislature's allocation of general sales taxes to the Comprehensive Transportation Fund (CTF) by $12,750,000 for the fiscal year ending September 30, 2002, and to transfer those revenues to the state's general fund. Appellants claim that the general sales tax revenues allocated to the CTF are "constitutionally dedicated" funds within the meaning of Const 1963, art 9, § 9, and therefore immune to the Governor's power to balance the budget, Const 1963, art 5, § 20.

The Court of Appeals concluded that art 9, § 9, which it found to be ambiguous, does not dedicate any portion of the general sales tax revenues for comprehensive transportation purposes. 260 Mich App 299; 677 NW2d 340 (2004). We agree with the Court of Appeals that the revenues at issue are not constitutionally dedicated and that the Governor had the authority to reduce the Legislature's allocation of general sales tax revenues to the CTF in EO 2001-9. We disagree, however, that art 9, § 9 is ambiguous. In affirming the Court of Appeals, we rely on the plain meaning of the constitutional provision.

2

## I. Facts and Procedural History

To alleviate a budget shortfall for the fiscal year ending September 30, 2002, the Governor implemented EO 2001-9. The order transferred $12,750,000 in general sales tax revenues from the CTF to the general fund.

Plaintiffs sought and obtained a preliminary injunction from the Ingham Circuit Court to enjoin the transfer. Plaintiffs maintained that the general sales tax revenues allocated to the CTF were "constitutionally dedicated" within the meaning of Const 1963, art 9, § 9 and immune to the Governor's power to reduce the expenditure and balance the budget under Const 1963, art 5, § 20.

In a published decision, the Court of Appeals reversed. 260 Mich App 299; 677 NW2d 340 (2004). The Court of Appeals found the language of the constitutional provision ambiguous, and examined the historical development of art 9, § 9 in determining whether the allocation to the CTF was "constitutionally dedicated." We granted oral argument on the application. 471 Mich 887 (2004).

## II. Standard of Review

Constitutional issues are reviewed de novo. *Wayne Co v Hathcock*, 471 Mich 445, 455; 684 NW2d 765 (2004).

Our first inquiry, when interpreting constitutional provisions, "is to determine the text's original meaning to the ratifiers, the people, at the time of ratification." *Id.* at 468. This is accomplished by "applying each term's plain meaning at the time of ratification." *Id.* at 468-469. See also *Silver Creek Drain Dist v Extrusions Div, Inc*, 468 Mich 367, 375; 663 NW2d 436 (2003).

### III. Analysis

The Governor's authority to reduce state expenditures is found in art 5, § 20, which states:

> No appropriation shall be a mandate to spend. The governor, with the approval of the appropriating committees of the house and senate, shall reduce expenditures authorized by appropriations whenever it appears that actual revenues for a fiscal period will fall below the revenue estimates on which appropriations for that period were based. Reductions in expenditures shall be made in accordance with procedures prescribed by law. *The governor may not reduce expenditures of the legislative and judicial branches or from funds constitutionally dedicated for specific purposes.* [Emphasis added.]

The disputed issue in this case is whether the general sales tax revenues that the Legislature allocated to the CTF are "constitutionally dedicated for specific purposes," and therefore immune from the Governor's authority to reduce expenditures. The answer to this question is found in art 9, § 9, which states, in relevant part:

4

All specific taxes, *except general sales and use taxes and regulatory fees*, imposed directly or indirectly on fuels sold or used to propel motor vehicles upon highways and to propel aircraft and on registered motor vehicles and aircraft shall, after the payment of necessary collection expenses, be used exclusively for transportation purposes as set forth in this section.

* * *

Amount used for transportation purposes. The balance, if any, of the specific taxes, *except general sales and use taxes and regulatory fees*, imposed directly or indirectly on fuels sold or used to propel motor vehicles upon highways and on registered motor vehicles, after the payment of necessary collection expenses; . . . and *not more than 25 percent of the general sales taxes*, imposed directly or indirectly on fuel sold to propel motor vehicles upon highways, on the sale of motor vehicles, and on the sale of the parts and accessories of motor vehicles . . . *shall be used exclusively for the transportation purposes of comprehensive transportation purposes as defined by law*. [Emphasis added.] [1]

While construing the wording of art 9, § 9 might require effort, the provision's meaning is clear. The provision limits the amount of general sales taxes that the Legislature can allocate to comprehensive transportation to

---

[1] The manner in which any funds allocated under this provision to "comprehensive transportation purposes" will be distributed is set forth in the General Sales Tax Act, MCL 205.51 *et seq*. For fiscal year 2001-2002, MCL 205.75(4) apportioned only 27.9 percent of the 25 percent of revenues to the CTF. The balance of the general sales tax revenues described in art 9, § 9 was directed to the state general fund.

"not more than 25 percent of the general sales taxes . . . ."  In doing so, it places a ceiling on the amount of general sales tax revenues that can be used "exclusively for . . . comprehensive transportation purposes . . . ," but does not dedicate any specific amount of general sales taxes to be used for comprehensive transportation purposes. The only conclusion that can be drawn from art 9, § 9 is that the general sales tax revenues described in that provision are not constitutionally dedicated funds.

When construing art 9, § 9, the Court of Appeals mistakenly found that the constitutional provision was subject to alternative interpretations, and then unnecessarily considered its history and purpose and the circumstances under which it was written and later amended. See 260 Mich App 307-311. As described above, the Court should have looked no further than the plain language of art 9, § 9 to determine that the general sales tax revenues allocated by the Legislature to the CTF were not constitutionally dedicated funds. Our obligation is to give the words of our Constitution a reasonable interpretation consistent with the plain meaning understood by the ratifiers. *Hathcock*, 471 Mich at 468-469. Text that may require reasonable effort to parse is not for that reason ambiguous.

In sum, we conclude that art 9, § 9 is unambiguous, and we agree with the Court of Appeals that, with respect to the reduction of the general sales tax revenues allocated to the CTF by EO 2001-9, the executive order was a lawful exercise of the Governor's constitutional authority under art 5, § 20.

We therefore affirm the Court of Appeals resolution of this issue in favor of the defendants. In all other respects, leave to appeal is denied because we are not persuaded that the remaining questions should be reviewed by this Court. This case is remanded to the trial court for entry of a judgment in favor of defendants on the merits.

> Clifford W. Taylor
> Maura D. Corrigan
> Robert P. Young, Jr.
> Stephen J. Markman

CAVANAGH, J.

I concur in the result only.

> Michael F. Cavanagh

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

COUNTY ROAD ASSOCIATION OF
MICHIGAN and CHIPPEWA COUNTY
ROAD COMMISSION,

    Plaintiffs-Appellees

and

MICHIGAN PUBLIC TRANSIT ASSOCIATION,
ANN ARBOR TRANSPORTATION
AUTHORITY, CAPITAL AREA
TRANSPORTATION AUTHORITY, and
SUBURBAN MOBILITY AUTHORITY FOR
REGIONAL TRANSPORTATION,

    Intervening Plaintiffs-Appellants,

v                                        No. 125665

GOVERNOR OF MICHIGAN, DIRECTOR OF
THE DEPARTMENT OF TRANSPORTATION,
DEPARTMENT OF TRANSPORTATION,
DIRECTOR OF THE DEPARTMENT OF
MANAGEMENT AND BUDGET,
DEPARTMENT OF MANAGEMENT AND
BUDGET, STATE BUDGET DIRECTOR,
STATE TREASURER, DEPARTMENT OF
TREASURY, SECRETARY OF STATE, and
STATE OF MICHIGAN,

    Defendants-Appellees.

_____

WEAVER, J. (*concurring*). I concur in the result of the opinion per curiam because I agree that the revenues at issue are not constitutionally dedicated and that the Governor had the authority to reduce the Legislature's

allocation of general sales tax revenues to the Comprehensive Transportation Fund. As noted by the majority opinion, Const 1963, art 9, § 9 places a ceiling on the amount of general sales tax revenues that can be used for comprehensive transportation purposes, but it does not dedicate any specific amount of general sales tax revenues to be used for comprehensive transportation purposes. I also agree with the majority that art 9, § 9 is not ambiguous.

I write separately because I cannot join some of the principles of constitutional interpretation, as they are articulated and applied in the opinion per curiam, including the standard of review section of the opinion, which relies on cases in which I concurred in part and dissented in part. See *Wayne Co v Hathcock*, 471 Mich 445, 485; 684 NW2d 765 (2004) (Weaver, J. concurring in part and dissenting in part), and *Silver Creek Drain Dist v Extrusions Div, Inc,* 468 Mich 367, 382; 663 NW2d 436 (2003) (Weaver, J. concurring in part and dissenting in part). In each of these cases, I disagreed with the method by which the majority attempted to carry out our mandate that we

interpret a constitutional provision according to the "common understanding" that the people would give it.[1]

Further, although I agree that the Court of Appeals was wrong to conclude that art 9, § 9 is ambiguous, I would not be unduly critical of the Court of Appeals for considering the history and purpose of the amendment. *Ante* at 6. A court may "also consider the circumstances surrounding the adoption of a constitutional provision and the purpose sought to be accomplished by it" when the common understanding of the provision is questioned. *Wayne Co, supra* at 487 (citing *Traverse City School Dist, supra*

---

[1] As described by Justice Cooley, the rule of "common understanding" means:

> "A constitution is made for the people and by the people. *The interpretation that should be given it is that which reasonable minds, the great mass of the people themselves, would give it.* 'For as the Constitution does not derive its force from the convention which framed, but from the people who ratified it, *the intent to be arrived at is that of the people,* and it is not to be supposed that they have looked for any dark or abstruse meaning in the words employed, *but rather that they have accepted them in the sense most obvious to the common understanding,* and ratified the instrument in the belief that that was the sense designed to be conveyed.'" [*Traverse City School Dist v Attorney General*, 384 Mich 390, 405; 185 NW2d 9 (1971), quoting Cooley's Const Lim 81 (emphasis in *Traverse City School Dist*).]

at 405).  Moreover, when interpreting a constitution, "the technical rules of statutory construction do not apply." *Traverse City School Dist, supra* at 405.

For these reasons, I concur in the result of the opinion per curiam.

Elizabeth A. Weaver

S T A T E   O F   M I C H I G A N

SUPREME COURT

COUNTY ROAD ASSOICATION OF MICHIGAN
and CHIPPEWA COUNTY ROAD COMMISSION,

    Plaintiffs-Appellees,

and

MICHIGAN PUBLIC TRANSIT ASSOCIATION,
ANN ARBOR TRANSPORTATION AUTHORITY,
CAPITAL AREA TRANSPORTATION
AUTHORITY, and SUBURBAN MOBILITY
AUTHORITY FOR REGIONAL TRANSPORTATION,

    Intervening Plaintiffs-Appellants,

v                                    No. 125665

GOVERNOR OF MICHIGAN, DIRECTOR OF
THE DEPARTMENT OF TRANSPORTATION,
DEPARTMENT OF TRANSORTATION, DIRECTOR
OF THE DEPARTMENT OF MANAGEMENT AND
BUDGET, DEPARTMENT OF MANAGEMENT AND
BUDGET, STATE BUDGET DIRECTOR, STATE
TREASURER, DEPARTMENT OF TREASURY,
SECRETARY OF STATE, and STATE OF
MICHIGAN,

    Defendants-Appellees.
_____

KELLY, J. (*concurring in the result only*).

    I concur with the majority that general sales tax
revenues are not constitutionally dedicated funds for the
reasons stated in the Court of Appeals opinion. The
Governor has the authority to reduce the Legislature's

allocation of general sales tax revenues to the Comprehensive Transportation Fund.

I write separately because, unlike the majority on this Court, I agree with the Court of Appeals that Const 1963, art 9, § 9 is ambiguous. It is ambiguous because it reasonably has "several possible meanings or interpretations."[1]

The Court of Appeals panel accurately explains the nature of the ambiguity:

> [The section] unequivocally exempts *all* general sales taxes from the restrictions imposed on specific taxes but then simultaneously subjects *up to twenty-five percent* of general sales taxes to the very same restrictions." [260 Mich App 299, 306; 677 NW2d 340 (2004) (emphasis in original).]

When interpreting an ambiguous constitutional provision, it is proper for a court to consider its history and purpose. The Court of Appeals did not err when it looked outside the text to the section's history and purpose to determine which of the text's several possible meanings was intended. The majority's criticism of this approach is misplaced.

For these reasons, I concur only in the result of the majority opinion.

Marilyn Kelly

---

[1] This is the first definition of "ambiguous" found in the *Random House Webster's College Dictionary* (2001).